Adeel ZAIDI, A. K. Chagla, Prestige Consulting, Inc., and Apex Katy Physicians–TMG, L.L.C., Appellants

v.

Pankaj K. SHAH and Apex Katy Physicians, LLC, Appellees

NO. 14-14-00855-CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion and Dissenting Opinion filed September 8, 2016

Andrew K. Meade, Fred. Wahrlich, Houston, TX, for Appellees

Robin L. Harrison; Douglas R. Little, Houston, TX, for Appellants

Panel consists of Chief Justice Frost and Justices Christopher and Donovan.

## OPINION

Tracy Christopher, Justice

This is an appeal from the judgment rendered after a bench trial on the plaintiffs' claims arising from the purchase and lease of real property for the operation of a hospital, and from the financial management of the business entities involved. The trial court rendered judgment holding the defendants and one non-party jointly and severally liable to two plaintiffs for more than $13.4 million in actual damages, together with pre- and post-judgment interest and $350,000 in attorney's fees. The trial court further ordered two of the defendants to pay more than $33.5 million in punitive damages, bringing the total judgment to more than $50 million.

Although the appellants have presented more than twenty issues and sub-issues for our review, the dispositive arguments are subsumed within a single question: given that they objected in the trial court that the proposed factual findings included invalid theories of liability for which there was no evidence, did the trial court reversibly err in refusing their request for specific findings identifying the damages that the trial court awarded for each cause of action? Because we conclude that at least one theory of liability is insupportable, we answer that question in the affirmative. That answer is sufficient for us to grant all the relief that the appellants have requested, which is that we reverse the trial court's judgment and remand the case for a new trial on all issues of liability and damages.

### I. BACKGROUND

This case arises from the dealings among the companies, managers, and investors involved in the purchase of real property and an unsuccessful attempt to operate a hospital.

Medistar Corporation owned real property referred to as Katy Pin Oak Hospital ("Pin Oak"), and Prestige Consulting, Inc. d/b/a Turnaround Management Group [1] ("Prestige") believed it could interest investors in purchasing the property and operating a hospital there. Of Prestige's two co-owners, Adeel Zaidi assumed the more active role, while A.K. Chagla was primarily concerned with reviewing contracts and notarizing documents. Eventually, Prestige formed Apex Katy Physicians, LLC ("the Landlord") to purchase the property; Apex Long Term Acute Care–Katy, L.P. ("the Tenant") to lease the property for use as a hospital; and Apex Katy Physicians—TMG, LLC ("the General Partner") to act as the general partner

---

1. This also appears in the record as Turn-Around Management Group.

in the limited partnership that was the Tenant.[2] Prestige was to staff and manage the Tenant pursuant to a written contract.

Zaidi recruited a number of investors, nearly all of whom were physicians. Dr. Pankaj K. Shah ("Shah") was among the investors in the project. Like the other investors, he was a limited partner in the Tenant, and owned a membership interest in the Tenant's General Partner. Shah and his wife Bharati also owned Indus Associates, LLC ("Indus"), and Indus owned the majority of the membership interests in the Landlord. Shah and Zaidi were co-managers of the Landlord. The General Partner was co-managed by Zaidi and one of three other investors—including Shah—who acted as co-managers on a rotating basis.

In January 2007, the Landlord agreed to buy the Pin Oak property from Medistar and lease it to the Tenant. The Landlord borrowed $9 million of the property's $13.5 million purchase price from MetroBank, and Shah personally guaranteed over $6 million of the loan. We therefore refer to the Landlord and Shah collectively as "the Borrowers."

The enterprise was not a success, and the Tenant never paid the full amount of each month's rent. Under the lease agreement, the Tenant's obligation to pay rent was secured by a lien on its accounts receivable, and in August 2009, an attorney hired by Shah to represent the Landlord attempted to foreclose on the lien. Shah then learned that more than a year earlier the Landlord's co-manager Zaidi had signed a waiver of all of the Landlord's interests in the Tenant's personal property. The month after the failed foreclosure attempt, the Tenant filed for bankruptcy.

In this consolidated civil suit, many claims, counterclaims, and cross-claims were asserted among the companies, managers, investors, and affiliated entities and individuals connected to the purchase and operation of the Pin Oak property. The record before us shows that at the time of trial, the plaintiffs and cross-plaintiffs included the Landlord, Shah, Shah's wife Bharati, and the Shahs' company Indus; of these parties, however, Shah and the Landlord were the only ones to appear at trial and the only ones to prevail on their claims. The defendants were Zaidi, Chagla, Prestige, the General Partner (collectively "the Turnaround Parties") and US TMG, LLC, which is another company affiliated with Prestige. The trial court, however, rendered judgment not only against all of these defendants but also against the Tenant, which was no longer a party to the case by the time of trial.

The trial court held the Turnaround Parties, US TMG, LLC and the Tenant jointly and severally liable to the Landlord for actual damages of $4,071,584, and held them liable to Shah for actual damages of $9,336,920. The trial court also held Zaidi liable for exemplary damages of $18,673,840 to Shah and $8,143,168 to the Landlord, and held Chagla liable for exemplary damages of $4,668,460 to Shah and $2,035,792 to the Landlord.

The trial court issued findings of fact and conclusions of law in which the damages were neither identified nor linked to any cause of action. The Turnaround Parties timely requested additional findings, but the trial court issued nothing further, and the Turnaround Parties appealed.

## II. Issue Addressed

Of the many issues presented, we address only a portion of the Turnaround

2. The General Partnership owned a 1% partnership interest in the Tenant; Prestige owned 50% of the membership interests in the Gen-

eral Partnership; and Prestige was owned 71% by Zaidi and 29% by Chagla.

Parties' second issue. The Turnaround Parties contend that the evidence is legally insufficient to support some theories of liability, but the trial court prevented them from properly presenting their case on appeal by awarding the Borrowers cumulative sums without linking the damages to specific causes of action. Because this argument is dispositive, we address only this legal-sufficiency question.

## III. STANDARD OF REVIEW

■ When a complete reporter's record is filed, we review the trial court's factual findings for legal sufficiency under the same standard we apply to jury verdicts. *See Green v. Alford*, 274 S.W.3d 5, 23 (Tex.App.–Houston [14th Dist.] 2008, pet. denied) (op. on reh'g en banc) (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996) (per curiam)). When analyzing the legal sufficiency of the evidence, we review the record in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Evidence is legally sufficient if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex.2004) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997)). We will conclude that the evidence is legally insufficient to support the finding only if (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810.

## IV. CASTEEL ANALYSIS

■ A judgment is reversible if the trial court made an error of law that probably prevented the appellant from properly presenting the case to the appellate court. TEX. R. APP. P. 44.1(a)(2). One such error occurs when, over a party's objection, the trial court submits to the jury a broad-form liability question incorporating multiple theories of liability, at least one of which is invalid. *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex.2000) (op. on reh'g). The Texas Supreme Court explained why this error can prevent a party from presenting its case on appeal:

> It is fundamental to our system of justice that parties have the right to be judged by a jury properly instructed in the law. Yet, when a jury bases a finding of liability on a single broad-form question that commingles invalid theories of liability with valid theories, the appellate court is often unable to determine the effect of this error. The best the court can do is determine that some evidence could have supported the jury's conclusion on a legally valid theory. To hold this error harmless would allow a defendant to be held liable without a judicial determination that a factfinder actually found that the defendant *should* be held liable on proper, legal grounds.

*Id.* (citations omitted).

■ The Texas Supreme Court later expanded the doctrine, applying it to a jury's assessment of damages when the jury was asked to consider damage elements for which there was no support. *See Harris County v. Smith*, 96 S.W.3d 230, 233 (Tex. 2002). As the court explained, "A trial court's error in instructing a jury to consider erroneous matters, whether an invalid liability theory or an unsupported element of damage, prevents the appellant

from demonstrating the consequences of the error on appeal." *Id.*

■ Although the *Casteel* line of cases arose in the context of jury trials, the parties have assumed that the same reasoning applies to nonjury trials. Other courts have relied on *Casteel* when reviewing appeals from judgments rendered after a bench trial, although none have reversed on that basis,[3] and we agree that the *Casteel* principles apply here. *Casteel* and its progeny are intended to remedy the trial court's error in failing to eliminate—or at least to segregate—the factfinder's consideration of invalid claims. The error is harmful when it results in a broad-form finding that prevents the reviewing court from determining whether the finding is based on valid claims. The same error can arise, with the same resulting harm, when the trial court is the factfinder.

■ The Texas Supreme Court has emphasized that *Casteel*-type errors must be preserved in the trial court by a timely and specific objection, although the parties need not specifically mention *Casteel. See Tex. Comm'n on Human Rights v. Morrison*, 381 S.W.3d 533, 536 (Tex.2012) (per curiam) ("*Casteel* error may be preserved without specifically mentioning *Casteel*."); *Thota v. Young*, 366 S.W.3d 678, 691 (Tex. 2012) ("[W]ithout some objection to the charge, claiming the submitted theory had no evidentiary support, or an objection to the form of the charge, any complaint of charge error was not preserved for review by the court of appeals."). Here, both sides brought the problem of broad-form findings to the trial court's attention. The Bor-

rowers stated in one of their proposed findings of fact and conclusions of law that the trial court "is compelled by the rule of ... *Casteel* ... to separate the damages caused by each of Plaintiffs' theories to avoid commingling valid and invalid theories." In their own proposed findings and in their objections to the Borrowers' proposed findings of fact and conclusions of law, the Turnaround Parties pointed out that there was no evidence to support various causes of action against some or all of them.

The trial court nevertheless issued findings of fact and conclusions of law that contained no findings linking any amount of damages to any cause of action, but which included the global finding that "the Defendants engaged in this [sic] acts, omissions, representations and non-disclosures individually and collectively in conspiracy ... and that this proximately caused harm and damages to the Plaintiffs, individually and collectively." The Turnaround Parties requested additional findings of fact, asking the trial court to identify the damages awarded to each of the Borrowers for each cause of action, but the trial court did not do so. This issue therefore has been preserved for our review. *See Miranda v. Byles*, 390 S.W.3d 543, 552 (Tex.App.–Houston [1st Dist.] 2012, pet. denied) (op. on reh'g) ("The corollary to [the *Harris County*/Casteel error-preservation] rule in bench trials is a party must ask for additional findings of fact and conclusions of law asking for a detailed apportionment of findings between the permissible and impermissible bases for liability."),

---

**3.** *See, e.g., Town Ctr. Mall, L.P. v. Dyer*, No. 02–14–00268–CV, 2015 WL 5770583, at *7 (Tex.App.–Fort Worth Oct. 1, 2015, pet. denied) (mem. op.) (considering, in an appeal from a non-jury trial, the appellant's *Casteel* arguments and rejecting them on the merits); *Tagle v. Galvan*, 155 S.W.3d 510, 516 (Tex.

App.–San Antonio 2004, no pet.) (stating that "properly prepared request for findings or additional findings specifically drawing a trial court's attention to the *Harris County*/Casteel problem will likely be sufficient to preserve error," but holding that the appellants failed to do so).

*cert. denied,* —— U.S. ——, 135 S.Ct. 373, 190 L.Ed.2d 253 (2014).

It would be sufficient for us to discuss a single unsupported cause of action, but given the dearth of opinions applying the *Casteel* line of cases to a nonjury trial, we address three examples. These, however, are examples only, and by discussing these particular bases of liability, we do not suggest that any claim we have not discussed is valid.

## A. Fraudulent-Inducement Claims Against All of the Turnaround Parties

■ The Turnaround Parties argue that the trial court erred in including fraudulent inducement as a basis for their liability to the Borrowers, because despite the trial court's conclusion that "several contracts existed between Plaintiffs and Defendants," there is no evidence of a contract between any Borrowers and any of the Turnaround Parties.[4] Because a contract between the parties is an element of a fraudulent-inducement claim, the absence of a contract renders fraudulent inducement an invalid theory of liability.

■ A claim for fraudulent inducement includes all of the elements of common-law fraud, plus elements that are specific to itself. A plaintiff seeking to recover for fraud must prove that (1) the speaker made a material representation; (2) the representation was false; (3) when the representation was made, the speaker either knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker intended the plaintiff to act upon the representation; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff

suffered injury thereby. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex.2011). Fraudulent inducement "shares the same elements but involves a promise of future performance made with no intention of performing at the time it was made." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex.2015). To prevail in a fraudulent-inducement claim, the plaintiff not only must establish all of the elements of a fraud claim, but must establish those elements "as they relate to an agreement between the parties." *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex.2001).

■ "Fraud" and "fraudulent inducement" are not different names for the same claim; they are different claims, and the trial court held the Turnaround Parties liable to the Borrowers under both theories of liability. Regardless of whether the Borrowers proved the elements of a fraud claim—a question we do not address—the evidence is legally insufficient to hold the Turnaround Parties liable for fraudulent inducement.

Because the trial court awarded cumulative damages based on multiple causes of action, we cannot know the extent to which the judgment rests on this erroneous finding. Thus, as in *Casteel,* the form of the findings and the award of cumulative damages based on claims that included an invalid theory of liability have prevented the Turnaround Parties from properly presenting their case on appeal.

## B. Breach-of-Fiduciary-Duty Claims Against the General Partner, Chagla, and Prestige

■ The trial court found that "Defendants, individually and collectively, owed

---

4. The trial court erroneously identified the Tenant as a defendant, and although there was a lease contract between the Tenant and the Landlord, the Borrowers amended their pleadings before trial to drop the Tenant as a

defendant. Because Bharati Shah and Indus did not prevail in their claims, we do not consider whether there was a contract between either of them and any of the Turnaround Parties.

fiduciary duties to the Plaintiffs, individually and collectively, including the duties of candor, loyalty, and disclosure." The trial court further found that the "Defendants, individually and collectively," committed various acts and omissions that would breach such duties, such as making material misrepresentations and failing to disclose material facts. The Turnaround Parties challenge this theory of liability because fiduciary duties are not imposed "collectively," but instead are created only through certain relationships, and certain of the Turnaround Parties lack such a relationship with one or both Borrowers. The Turnaround Parties are correct.

Fiduciary duties arise in two types of relationships. A confidential relationship—which may arise from a moral, social, domestic, or purely personal relationship of trust and confidence—may give rise to an informal fiduciary duty. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex.1998) (citing *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1962)). An informal fiduciary duty will not be imposed in a business transaction unless the personal confidential relationship existed prior to, and apart from, "the agreement made the basis of the suit." *See id.* at 288. The Borrowers neither alleged nor offered evidence of such a preexisting confidential relationship with any member of the Turnaround Parties.

More commonly, certain formal relationships—such as those between an attorney and client, between partners, and between a trustee and a trust beneficiary—give rise to fiduciary duties as a matter of law. *See Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex.1998). The General Partner in the Tenant limited partnership, however, owed no fiduciary duty to the Landlord, and Chagla and duty to the Landlord, and Chagla and Prestige owed no fiduciary duties to either of the Borrowers.

The Borrowers do not dispute this absence of fiduciary duties, but instead argue only that Zaidi "was a fiduciary to many parties" and "all entities and individuals who conspired with, participated with, aided/abetted, or employed Zaidi while he was committing any breaches of fiduciary duty were also responsible for those breaches." But, to hold the General Partner, Chagla, and Prestige liable for conspiring in Zaidi's breach of fiduciary duty is one theory of liability, and to hold them liable for breaching their own fiduciary duties is a distinct theory of liability. Regardless of whether there is legally sufficient evidence that Zaidi's co-defendants conspired in his breach of fiduciary duty—a question we do not address—such evidence would not support a finding that each of the Turnaround Parties owed fiduciary duties to each of the Borrowers. Once again, the trial court has prevented the Turnaround Parties from properly presenting the case on appeal by issuing findings that include invalid bases of liability.

## C. Default Judgment Against the General Partner

Before any evidence was heard at trial, the Borrowers urged the trial court to enter default judgment against the General Partner because it allegedly "forfeited its corporate privileges, including its right to sue and to defend." As support for a default judgment, the Borrowers relied on Texas Tax Code section 171.252(1), under which a corporation that has forfeited its corporate privileges for nonpayment of taxes "shall be denied the right to sue or defend in a court of this state." TEX. TAX CODE ANN. § 171.252(1) (West 2015). The same provisions apply to any taxable entity, such as a limited liability company. *See*

*id.* §§ 171.2515, 171.3015.[5] After taking the matter under advisement, the trial court rendered default judgment against the General Partner.[6] We agree with the Turnaround Parties that in doing so, the trial court erred as a matter of law.

Despite the statute's language, it has long been established that when such a taxable entity has been sued, the plaintiff still must prove its case, and the entity may raise defenses and introduce evidence that "negatives the plaintiff's case." *Bryan v. Cleveland Sand & Gravel Co.*, 139 S.W.2d 612, 613 (Tex.Civ.App.–Beaumont 1940, writ ref'd);[7] *see, e.g., Cognata v. Down Hole Injection, Inc.*, 375 S.W.3d 370, 375 (Tex.App.–Houston [14th Dist.] 2012, pet. denied) ("Despite such clear language, this statute has historically been limited to prohibit delinquent corporations from bringing cross-actions, not from merely defending lawsuits."); *Cruse v. O'Quinn*, 273 S.W.3d 766, 770 (Tex.App.–Houston [14th Dist.] 2008, pet. denied) ("Tax Code section 171.252 does not prevent a corporation that has forfeited its corporate privileges from defending claims against it."); *Hardwick v. Austin Gallery of Oriental Rugs, Inc.*, 779 S.W.2d 438, 441 (Tex.App.–Austin 1989, writ denied) ("[S]uch a corporate defendant may set up purely passive defenses and its answer may not be stricken; that

**5.** The record contains neither a motion for default judgment nor any evidence that the General Partner's right to sue and defend was forfeited. The record shows only that the Borrowers' attorney represented that the company's rights were forfeited, and the Turnaround Parties' attorney represented that the company "got [its] charter back" before trial. On appeal, the Turnaround Parties challenge the default judgment only on the ground that the trial court misconstrued the statutes on which the Borrowers relied. We therefore treat as true the Borrowers' representation that the General Partner's "corporate privileges" were forfeited after the company was sued, but before the case was tried.

**6.** The General Partner was one of the defendants against whom the trial court rendered judgment. In its findings of fact and conclusions of law, the trial court stated under "Preliminary Matters" that "default judgment shall be entered against [the General Partner] because [the General Partner] forfeited its corporate privileges prior to trial."

The dissent argues that the findings were an untimely attempt to modify the judgment. But, this cannot be so. If the findings are consistent with the judgment, then the findings simply explain the court's reasoning without modifying the judgment. The findings do not conflict with the judgment merely because the latter does not state why judgment was rendered against the General Partner. *See* Tex. R. Civ. P. 299a ("Findings of fact shall not be recited in a judgment."). Nor is there a conflict between the recitals preced-

ing the decretal portion of the judgment and the findings of fact and conclusions of law. *See J.K.A. v. State*, 855 S.W.2d 58, 60 (Tex. App.–Houston [14th Dist.] 1993, writ denied) ("Recitals ..., except those showing the full name of the parties, etc. and those stating for and against whom judgment is rendered, are not sanctioned by [Rule 306] nor given place or function in a judgment." (quoting *Roberson Farm Equip. Co. v. Hill*, 514 S.W.2d 796, 801 (Tex.Civ.App.–Texarkana 1973, writ ref'd n.r.e.)). But, even if there were a conflict between a "judgment," on one hand, and a "default judgment" as stated in the trial court's findings of fact and conclusions of law, on the other hand, then the latter would control. *See Torres v. Clark*, No. 14–11–00750–CV, 2012 WL 1694607, at *2 (Tex. App.–Houston [14th Dist.] May 15, 2012, no pet.) (mem. op.) ("Although the order does not state that Torres's suit was dismissed because of his failure to appear and prosecute the case, 'findings of fact and conclusions of law filed after a judgment are deemed controlling as to any conflict therewith.'" (quoting *Dickerson v. DeBarbieris*, 964 S.W.2d 680, 684 (Tex.App.–Houston [14th Dist.] 1998, no pet.)).

**7.** By refusing the application for writ of error, the Texas Supreme Court adopted the opinion as its own. *See Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex.1962); *see also State ex rel. McWilliams v. Town of Oak Point*, 579 S.W.2d 460, 462–63 (Tex. 1979).

is to say, the plaintiff must still establish his cause of action in order to recover, the statute notwithstanding, and the corporate defendant may offer evidence that negates the plaintiff's claim."), *superseded by statute on other grounds as stated in Bair Chase Prop. Co. v. S & K Dev. Co.*, 260 S.W.3d 133, 140 (Tex.App.–Austin 2008, pet. denied); *see also* TEX. TAX CODE ANN. § 171.253 ("On a suit against a corporation on a cause of action arising *before* the forfeiture of the corporate privileges of the corporation, affirmative relief may not be granted to the corporation unless its corporate privileges are revived under this chapter." (emphasis added)); *Maloney Mercantile Co. v. Johnson Cty. Sav. Bank*, 56 Tex.Civ.App. 397, 399, 121 S.W. 889, 890 (Tex.Civ.App.–Fort Worth 1909, no writ) ("[W]e see no reason for the Legislature to have distinguished between causes of action arising before and after forfeiture unless it was intended that a denial of the right to defend should be limited to causes of action accruing after the forfeiture.").[8]

█ A default judgment operates as an admission by the defaulting party of all of the petition's factual allegations other than the amount of unliquidated damages. *See Holt Atherton Indus., Inc. v. Heine*,

835 S.W.2d 80, 83 (Tex.1992). Thus, by erroneously rendering the default judgment, the trial court treated the Borrowers' factual allegations as admissions of liability by the General Partner—even though, as to some causes of action, the General Partner's liability to one or both Borrowers is supported by legally insufficient evidence. Because the trial court held the Turnaround Parties jointly and severally liable for all of the Borrowers' actual damages, this erroneous ruling may have affected the judgment against the other Turnaround Parties as well. Here, too, the trial court prevented the Turnaround Parties from properly presenting their appeal by including an invalid theory of liability as a basis for the judgment against them.

## V. HARM

█ The trial court's global factual findings were burdened with more causes of actions than the evidence would bear, so we must reverse and remand unless we are "reasonably certain that the [factfinder] was not significantly influenced" by the inclusion of invalid theories of liability. *See Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 227–28 (Tex.2005). Because it

---

**8.** The dissent states that in *Humble Oil & Refining Co. v. Blankenburg*, 149 Tex. 498, 235 S.W.2d 891, 894 (1951), the Texas Supreme Court concluded that the effect of the statute's predecessor was to deny the corporation the right to defend itself in court. *See ante* at 442. We disagree with the dissent's characterization of *Blankenburg*'s import. The court did repeat the language of the statute, but it did not purport to change *Bryan*'s holding about the meaning of that language. In *Bryan*, the court unambiguously rejected the argument "that such a corporation [i.e., one that has forfeited its charter] cannot interpose a defense purely negative in character against a suit brought against it, grounded upon matters which arose during the time it was lawfully engaged in business." *Bryan*, 139 S.W.2d at 613. *Blankenburg* can hardly be said to have overruled *Bryan sub silentio* given that

the *Blankenburg* court described only the Franklin Development Company as having forfeited its right to do business in the state, and Franklin Development Company was never a defendant in the litigation. *See Blankenburg*, 149 Tex. at 502, 235 S.W.2d at 893. Rather, suit was brought by the beneficial owners of the company's assets to obtain title and possession of those assets. *Id.*, 149 Tex. at 500, 503–04, 235 S.W.2d at 892, 894. The suit was brought "not for the benefit of the corporation, but by the individual stockholders, suing in their own right." *Id.*, 149 Tex. at 507, 235 S.W.2d at 896 (quoting *Pratt–Hewit Oil Corp. v. Hewit*, 122 Tex. 38, 47, 52 S.W.2d 64, 67 (1932)). Thus, *Blankenburg* is not inconsistent with *Bryan*'s holding that after a corporation's charter has been forfeited, it may still "interpose a defense purely negative in character."

is impossible to determine the extent to which the trial court awarded actual and punitive damages on an invalid basis, we have no such reasonable certainty. We instead conclude that the trial court's error in cumulating the damages awarded for valid and invalid theories of liability "precludes [us] from determining whether the [factfinder] found liability on an invalid basis, precludes determination of whether the error probably caused the rendition of an improper judgment, and is harmful because it prevent[ed] proper presentation of the case on appeal." *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 865 (Tex.2009).

## VI. DISPOSITION

Having found harmful error, we must consider the appropriate remedy and the extent to which it applies to the various claims and parties.

### A. Type of Remedy Available

As in the *Casteel* line of cases, we must remand the cause for a new trial, but we have considered whether it is appropriate to render judgment in part on the fraudulent-inducement and breach-of-fiduciary-duty claims discussed above. *See* TEX. R. APP. P. 43.3 (requiring an appellate court, when reversing a trial court's judgment, to render the judgment the trial court should have rendered unless remand is required for further proceedings or in the interests of justice); TEX. R. APP. P. 44.1(b) (providing that if reversible error does not affect a part of the controversy that is separable without unfairness to the parties, then the appellate court must order retrial only of the part affected by the error). As a general rule, however, we can grant parties less relief than requested, but we cannot grant more. *See, e.g., Enzo Invs., LP v. White*, 468 S.W.3d 635, 654 (Tex.App.–Houston [14th Dist.] 2015, pet.

denied) (sub. op.) (rejecting the argument that an appellant's prayer for rendition forecloses the reviewing court from granting the lesser relief of remand); *Advanced Personal Care, LLC v. Churchill*, 437 S.W.3d 41, 49 (Tex.App.–Houston [14th Dist.] 2014, no pet.) (ordering the lesser relief of remand despite the appellant's request for rendition); *Garza v. Cantu*, 431 S.W.3d 96, 108–10 (Tex.App.–Houston [14th Dist.] 2013, pet. denied) (sub. op.) (granting the appropriate remedy of remand where the appellant asked only for rendition but "did not adopt a 'rendition-or-bust' strategy").

According to the dissent, it has been this court's rule since 1984 to grant the party prevailing on appeal the relief appropriate for a given type of error, without regard for what relief was requested. As support for this proposition, the dissent cites *Olin Corp. v. Dyson,* 678 S.W.2d 650, 657 (Tex. App.–Houston [14th Dist.] 1984), *rev'd*, 692 S.W.2d 456 (Tex.1985).

*Olin* does not support the proposition for which it is cited. In *Olin*, the appellant argued that there was no evidence to support the jury's finding of gross negligence, but requested only remand or modification rather than rendition of judgment. *See id.* Contrary to the dissent's characterization, however, the question of whether the appellant nevertheless was entitled to the unrequested relief of rendition of judgment was never before the court because we overruled the no-evidence point of error. *See id.* We discussed the appellant's prayer for relief only because the appellees argued "that appellant failed to preserve a no evidence point because it does not include in its prayer for relief a request for reversal and rendition." *Id.* We rejected that argument, explaining,

> If the language of a point of error leaves a Court of Civil Appeals in doubt as to whether it is a no evidence point, an

insufficient evidence point, ... the court should resolve the doubt by looking to the procedural predicate for the point, the argument under the point, and the prayer for relief.

*Id.* (quoting Robert W. Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 TEX. L. REV. 361, 372 (1960)). We concluded, "This court has no need to look to the prayer for relief in appellant's brief to determine whether appellant raises a no evidence point because appellant's final point of error specifically alleges legal insufficiency of the evidence." *Id.*

Although the dissent would hold that we can render judgment even if only remand was requested, that result cannot be reconciled with the Texas Supreme Court's recent statements to the contrary. *See e.g., Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 392 (Tex.2011) ("[The Sawyer Trust] makes no similar request to replead to assert a claim for compensation. ... Generally, a party is not entitled to relief it does not request."); *State v. Brown*, 262 S.W.3d 365, 370 (Tex. 2008) ("Brown does not seek a remand for the trial court to consider sanctions. A party generally is not entitled to relief it does not seek."); *Stevens v. Nat'l Educ. Ctrs., Inc.*, 11 S.W.3d 185, 186 (Tex.2000) (per curiam) ("But NEC specifically requested that this Court not remand for a new trial and prayed only for rendition. Because NEC did not request appropriate relief for granting its petition for review, we deny both petitions for review.").

In stating that "a party generally is not entitled to relief it does not seek," the Texas Supreme Court was not speaking solely to situations in which the relief at issue was not requested in the trial court. In *Sawyer Trust*, for example, the court refused to remand for repleading, but that generally is not a request that the plaintiff is required to make in the trial court. *See*

*Sawyer Trust*, 354 S.W.3d at 392. And in *Brown*, there would have been no reason for the Texas Supreme Court to mention that "Brown does not seek a remand for the trial court to consider sanctions" if the court's holding was based solely on Brown's earlier failure to seek sanctions from the trial court. *See Brown*, 262 S.W.3d at 370 ("We do not believe it proper to sua sponte grant relief Brown has not sought.").

Appellate courts can, however, grant less relief than requested. For example, an appellate court usually is granting less relief than requested when it modifies the judgment or suggests and accepts remittitur in lieu of a new trial. And courts frequently grant the lesser relief of remand when rendition is requested. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex.2006) ("Chapa's failure to segregate her attorney's fees does not mean she cannot recover any. ... [A]n unsegregated damages award requires a remand. Accordingly, remand is required."). And in *Stevens*, it would have been unnecessary for the Texas Supreme Court to point out that the petitioner "specifically requested that this Court not remand for a new trial and prayed only for rendition" if the court was limited to the relief prayed for and could not have granted the lesser relief of remand. *See Stevens*, 11 S.W.3d at 186.

The rule that appellate courts can grant less relief than requested, but cannot grant more relief than requested, is consistent with the rule that obtains in trial courts. *Compare G&H Towing Co. v. Magee*, 347 S.W.3d 293, 298 (Tex.2011) (per curiam) (stating that when a trial court grants more relief than requested, the judgment is erroneous) *with S. Cty. Mut. Ins. Co. v. First Bank & Trust of Groves*, 750 S.W.2d 170, 173–74 (Tex.1988) (reversing where the intermediate appellate

court's strict-liability finding "[went] further than any relief the Bank requested" in its pleadings or in its appellate brief).

Because the Turnaround Parties have not asked us to render judgment regarding any specific claim but instead seek only remand, we conclude that remand is the relief to which they are entitled. *See Enzo Invs., LP*, 468 S.W.3d at 654; *Advanced Personal Care, LLC*, 437 S.W.3d at 49; *Garza*, 431 S.W.3d at 108–10.

## B. Parties on Remand

■ We also must identify which plaintiffs' claims must be relitigated against which defendants. Although we generally reverse the judgment only as to the parties who have successfully appealed it, that rule does not apply when the rights of appealing and nonappealing parties are interwoven or dependent on one another. *See Sonat. Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 236–37 (Tex. 2008).

### 1. The claims of Bharati Shah and Indus are not remanded.

■ Although Shah's wife Bharati and their company Indus Associates, LLC are not mentioned in the judgment, the record shows that in answering a petition in intervention, they asserted their own claims, including cross-claims against the Turnaround Parties. The record does not show that those claims were nonsuited or severed, so they appear to be part of the final judgment before us. The judgment expressly states that it "disposes of all claims and all parties, and is appealable."

Bharati Shah and Indus did not appeal the portion of the judgment expressly denying all relief that was not granted, and their rights are not interwoven with or dependent on the rights of the Turnaround Parties. Because their unsuccessful claims are separable without unfairness, we sever

the portion of the judgment denying them any relief and exclude their claims from the scope of remand. *See Starkey v. Graves*, 448 S.W.3d 88, 113 n. 34 (Tex. App.–Houston [14th Dist.] 2014, no pet.).

### 2. The Borrowers' claims against the Turnaround Parties and US TMG, LLC are remanded.

■ On the defense side of the case, the trial court held the Turnaround Parties, US TMG, LLC, and the Tenant liable to the Borrowers, but only the Turnaround Parties appealed. We conclude, however, that because the trial court found that the Turnaround Parties, US TMG, and the Tenant committed every alleged misdeed "individually and collectively" against each Borrower "individually and collectively" and held all of them jointly and severally liable for the Borrowers' actual damages, the rights of all of these individuals and entities are so interwoven and interdependent that we must reverse the judgment against all of them. *See Truck Drivers, Chauffeurs, Warehousemen & Helpers, Local No. 941 v. Whitfield Transp., Inc.*, 154 Tex. 91, 102, 273 S.W.2d 857, 863 (1954) (op. on reh'g); *Lockhart v. A.W. Snyder & Co.*, 139 Tex. 411, 424–25, 163 S.W.2d 385, 392 (1942); *Starkey*, 448 S.W.3d at 113 n. 34 (holding that the plaintiff's various claims against multiple defendants could not be separated without unfairness where the plaintiff allegedly sustained "the same two measures of damages in the same amounts, regardless of which parties were liable or the conduct on which liability was based").

Although we reverse the judgment against all of the persons and entities that the trial court held liable in its final judgment, the record shows that the Tenant had ceased to be a party to the case before trial. Because there were no claims by or against the Tenant by the time of trial,

there are no claims by or against the Tenant to remand.

## VII. CONCLUSION

For the foregoing reasons, we sever the portion of the judgment denying any relief to Bharati Shah and Indus Associates, LLC; reverse the remainder of the judgment; and remand the cause—the parties to which are Zaidi, Chagla, Prestige, the General Partner, US TMG, LLC, the Landlord, and Pankaj Shah—for a new trial.

Frost, C.J., dissenting.

Kem Thompson Frost, Chief Justice, dissenting.

I respectfully dissent and write separately to address two points.

First, the court need not address the appellants' fifteenth-issue argument that the trial court erred in granting a default judgment because that issue is moot. Mootness notwithstanding, the majority concludes that a corporate entity has the right to defend itself in a Texas court even if the entity's right to transact business in Texas has been forfeited under subchapter F of Tax Code chapter 171 and not revived. But, the unambiguous language of Tax Code section 171.252 and precedent from the Supreme Court of Texas mandates the opposite conclusion.

Second, under this court's binding precedent, if an appellant shows that the evidence is legally insufficient to support an essential element of a claim, this court should reverse and render a take-nothing judgment on that claim, even if the appellant did not expressly request that appellate relief in the appellant's briefing. Therefore, this court must address all of the appellant's legal-sufficiency arguments before concluding that all claims should be remanded to the trial court for a new trial.

**The fifteenth issue is moot because the trial court did not render a default judgment.**

### Trial on the Merits of the Liability and Damage Issues

Just before trial began, appellees/plaintiffs Dr. Pankaj K. Shah and Apex Katy Physicians, LLC (hereinafter collectively the "Plaintiffs") asked the trial court to grant a default judgment against appellant/defendant Apex Katy Physicians–TMG, LLC (hereinafter the "General Partner"). After hearing argument, the trial court took the request under advisement but did not rule on it. The case proceeded to a four-day bench trial of all pending issues, including the General Partner's liability on the Plaintiffs' claims, in which the General Partner participated.

### The Nature of the Final Judgment

About four months after trial, the court rendered a final money judgment against appellants/defendants Adeel Zaidi, A.K. Chagla, Prestige Consulting, Inc. d/b/a Turnaround Management Group, and the General Partner (hereinafter collectively the "Turnaround Parties"). In the judgment, the trial court stated that the case was called for trial and that the Plaintiffs and the Turnaround Parties, including the General Partner, appeared, announced ready for trial, and that the Plaintiffs' claims against the Turnaround Parties, including the General Partner, had been tried to the bench. The trial court found that all defendants, including the General Partner, had engaged in a civil conspiracy and that all defendants were jointly and severally liable for the Plaintiffs' actual damages. The trial court rendered a money judgment against the defendants, jointly and severally, for an amount representing each plaintiff's actual damages, prejudgment interest on the damages, and attorney's fees. The trial court stated

that the judgment disposed of all claims and parties and that all relief not granted was expressly denied.

The trial court did not state that the General Partner failed to appear or failed to answer. Nor did the trial court state that the General Partner had forfeited its right to defend against the Plaintiffs' claims. On the contrary, the trial court stated that the General Partner had defended itself against the Plaintiffs' claims, although unsuccessfully. The trial court did not state that it had granted a default judgment against the General Partner or that anything had operated as an admission by the General Partner of all the Plaintiffs' factual allegations regarding liability. If the trial court had granted a default judgment that operated in this manner, the default judgment would have obviated the need for trial of these issues.

When the language of the trial court's judgment is unambiguous, as in this case, the reviewing court is to interpret the judgment according to its plain language. *Reiss v. Reiss*, 118 S.W.3d 439, 441–42 (Tex.2003). Under the plain language of the judgment, the trial court did not grant the Plaintiffs' request for a default judgment against the General Partner in the court's final judgment of July 24, 2014. Instead, under the plain language of the judgment's "Mother Hubbard" clause, the trial court denied this request. *See Garcia v. Guerrero*, No. 04–09–00002–CV, 2010 WL 183480, at *7 (Tex.App.–San Antonio Jan. 20, 2010, no pet.) (holding that trial court's final judgment did not grant a default judgment because the judgment recited that the trial court based its ruling on the evidence and arguments of counsel at the bench trial and did not state that the ruling was based on the defendants' default) (mem. op.); *Wimmer v. State*, No. 03–03–00135–CV, 2004 WL 210629, at *2 (Tex.App.–Austin Feb. 5, 2004, pet. denied) (holding that trial court's final judgment did not grant a default judgment because the judgment recited that the trial court based its ruling on the evidence and did not state that the ruling was based on the defendant's default) (mem. op.).

### The Expiration of Plenary Power to Modify, Correct, or Reform the Judgment

No party filed a motion that would extend the trial court's plenary power to modify, correct, or reform its final judgment; therefore, the trial court's plenary power expired by operation of law on August 25, 2014. *See* Tex. R. Civ. P. 329b; *In re Gillespie*, 124 S.W.3d 699, 702–03 (Tex. App.–Houston [14th Dist.] 2003, no pet.) (en banc). Though the Turnaround Parties' request for findings of fact and conclusions of law extended the time to perfect appeal, that request did not extend the trial court's plenary power. *See* Tex. R. Civ. P. 329b; *In re Gillespie*, 124 S.W.3d at 702–03.

On October 3, 2014, long after its plenary power to modify, correct, or reform its judgment had expired, the trial court signed findings of fact and conclusions of law. Although there are a number of findings of fact and conclusions of law directed against the General Partner as if no default judgment had been rendered, in one sentence, the trial court stated that "[t]he Court concludes that default judgment shall be entered against [the General Partner] because [the General Partner] forfeited its corporate privileges prior to trial." The trial court did not state that it had rendered a default judgment in its final judgment. Even though its plenary power to modify, correct, or reform had expired, the trial court still could sign findings of fact and conclusions of law explaining the reasons for its final judgment. *See In re Gillespie*, 124 S.W.3d at 702–03. Nonethe-

less, to the extent the trial court attempted to render a default judgment after it lost plenary power to change its judgment, that attempt is of no effect; any rendering of a default judgment after plenary power has expired is void. *See* Tex. R. Civ. P. 329b; *In re Gillespie*, 124 S.W.3d at 702–03.

The majority asserts that, even if the trial court's conclusions of law conflict with the final judgment as to whether the trial court granted a default judgment, the conclusions of law control and thus modify the trial court's final judgment.[1] The majority cites two cases in which this court construed findings of fact and conclusions of law to have modified the trial court's prior judgment, but in neither case did this court hold that the trial court's findings could do so even if they were issued after the trial court's plenary power had expired.[2] *See Torres v. Clark*, No. 14–11–00750–CV, 2012 WL 1694607, at *2 (Tex. App.–Houston [14th Dist.] May 15, 2012, no pet.) (mem. op.); *Dickerson v. DeBarbieris*, 964 S.W.2d 680, 684 (Tex.App.– Houston [14th Dist.] 1998, no pet.).

The majority concludes that the trial court reversibly erred by rendering a default judgment against the General Partner that operated as an admission by the General Partner of all the Plaintiffs' factual allegations other than the amount of unliquidated damages.[3] Under the unambiguous language of the trial court's final judgment, the trial court did not render a default judgment against the General Partner, and the trial court did not base its judgment against the General Partner on any admission by the General Partner of the Plaintiffs' factual allegations. Presum-

ing for the sake of argument that a recitation in the trial court's conclusions of law generally may modify part of a prior judgment contrary to the statement in the conclusions of law, under this court's unanimous en banc precedent, such a modification may occur only if the trial court issues the conclusions during its plenary power to modify, correct, or reform the judgment. *See* Tex. R. Civ. P. 329b; *In re Gillespie*, 124 S.W.3d at 702–03. Because the trial court issued its conclusions after it lost plenary power to modify, correct, or reform its final judgment, no language in that document operates to modify the trial court's prior judgment. *See HSBC Bank USA, N.A. v. Watson*, 377 S.W.3d 766, 771–72 (Tex.App.–Dallas 2012, pet. dism'd) (holding findings of fact and conclusions of law stating that the trial court dismissed for lack of jurisdiction would not govern over the language of the trial court's order, in which the trial court stated it was ruling on the merits, because the trial court signed the findings of fact and conclusions of law after it lost plenary power and thus the findings and conclusions could not modify the judgment).

Because the trial court did not grant any default judgment while it had power to do so, the fifteenth issue is moot. *See Emesowum v. Morgan*, No. 14–13–00397–CV, 2014 WL 3587385, at *1 (Tex.App.–Houston [14th Dist.] July, 22, 2014, pet. dism'd) (mem. op.).

**The majority's resolution of the fifteenth issue is based on an improper statutory construction.**

Mootness aside, the majority reaches the wrong conclusion in interpreting the

---

1. *See post* at 452, n. 6.

2. From 1991 through this court's en banc decision in *In re Gillespie* in 2003, this court held that a request for findings of fact and conclusions of law extended the trial court's plenary power, making it less likely that find-

ings would be signed outside of the trial court's plenary power than under the current rule of *In re Gillespie*. *See* 124 S.W.3d at 702– 04.

3. *See ante* at 454, 456.

unambiguous language of Tax Code section 171.252. Under the plain text of that statute and Supreme Court of Texas precedent, a corporate entity whose right to transact business in Texas has been forfeited under Subchapter F of Tax Code Chapter 171 and has not been revived does not have the right to defend itself in a Texas court.

The Plaintiffs asked the trial court to grant a default judgment against the General Partner on the ground that the General Partner's corporate privileges had been forfeited for failure to pay franchise taxes or to file a required report and that under Tax Code section 171.252, the General Partner did not have the right to defend itself in the trial court. The General Partner argued that under Texas case law, a corporate entity has the right to defend itself in a Texas court even if the entity's right to transact business in Texas has been forfeited under subchapter F of Tax Code chapter 171 and has not been revived. The trial court granted the default judgment.

Under their fifteenth issue, the Turnaround Parties assert a single legal argument: "Despite the language of section 171.252 of the Texas Tax Code, which by its terms denies a corporate entity the right to 'sue or defend in a court of this state' if its charter has been forfeited, it has been the settled law in Texas for years that a corporate entity that has forfeited its charter may indeed nevertheless defend itself."[4]

---

4. This quote is from the Turnaround Parties' opening brief. Though there appears to have been no evidence before the trial court to prove that the General Partner's right to transact business in Texas had been forfeited, the Turnaround Parties have not raised this issue on appeal. Nor have the Turnaround Parties raised an issue as to any alleged revival of the General Partner's right to transact business in Texas. The Turnaround Parties have not asserted on appeal that the Plaintiffs

### Applicable Text of Tax Code Section 171.252

For the purposes of this analysis, this court may presume: (1) the General Partner is a "taxable entity" as defined in Tax Code section 171.0002 and as used in Tax Code section 171.2515; (2) under Tax Code sections 171.251 and 171.2515 (which are in subchapter F of Tax Code chapter 171), the comptroller forfeited the General Partner's right to transact business in Texas; and (3) the General Partner's right to transact business in Texas has not been revived.[5] Under section 171.2515's unambiguous text, section 171.252 applies to the forfeiture of a taxable entity's right to transact business in Texas to the same extent that it applies to the forfeiture of a corporation's corporate privileges. See Tex. Tax Code Ann. § 171.2515 (West, Westlaw through 2015 R.S.).

### Plain Meaning of Tax Code Section 171.252

Under Tax Code Section 171.252, because the General Partner's right to transact business in Texas has been forfeited under subchapter F of Chapter 171, the General Partner "shall be denied the right to sue or defend in a court of this state." Tex. Tax Code Ann. § 171.252 (West, Westlaw through 2015 R.S.). Also relevant, in Tax Code section 171.254, entitled "Exception to Forfeiture," the Legislature provides that "[t]he forfeiture of the corporate privileges of a corporation does not

---

waived their ability to obtain a default judgment by proceeding to trial without obtaining a ruling on their request for a default judgment.

5. These points were premises of the Plaintiffs' request for a default judgment, and the Turnaround Parties have not challenged them on appeal.

apply to the privilege to defend in a suit to forfeit the corporation's charter or certificate of authority." Tex. Tax Code Ann. § 171.254 (West, Westlaw through 2015 R.S.).

The meaning of the quoted part of Tax Code section 171.252 is a legal question, which this court reviews *de novo* to ascertain and give effect to the Legislature's intent. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex.2009). Where text is clear, text is determinative of that intent unless enforcing the plain language of the statute as written would produce absurd results. *Id.* Therefore, our practice when construing a statute is to recognize that the words the Legislature chose are the surest guide to legislative intent. *Id.*

The plain meaning of "defend" in this context is "to deny, contest, or oppose (an allegation or claim)." BLACK's LAW DICTIONARY 450 (8th ed. 2004). Therefore, under the unambiguous language of Tax Code Section 171.252, because the General Partner's right to transact business in Texas has been forfeited under subchapter F of Chapter 171, the General Partner does not have the right to deny, contest, or oppose allegations or claims in a Texas court. *See* Tex. Tax Code Ann. § 171.252; BLACK's LAW DICTIONARY 450 (8th ed. 2004). The plain meaning of the exception in section 171.254 (which does not apply to today's case) shows that in proceedings in Texas courts not described in the exception, the forfeiture of a corporation's privileges or of a taxable entity's right to transact business in Texas does result in the loss of the entity's right to defend. *See id.* §§ 171.252, 171.254.

The trial court is a Texas court, and the Plaintiffs are asserting claims and making allegations against the General Partner in a Texas court. Therefore, under the unambiguous text of section 171.252, the General Partner may not deny, contest or oppose the Plaintiffs' allegations and claims against the General Partner unless and until the General Partner's right to transact business in Texas has been revived. *See* Tex. Tax Code Ann. § 171.252; BLACK's LAW DICTIONARY 450 (8th ed. 2004). This statutory construction does not produce an absurd result that would allow or compel this court to ignore the plain language of the statute. *Entergy Gulf States, Inc.*, 282 S.W.3d at 437–38. If the corporate privileges of a corporation or the right to transact business in Texas of a taxable entity are forfeited under subchapter F of Tax Code Chapter 171, the entity loses the right to sue or defend in a Texas court. *See* Tex. Tax Code Ann. §§ 171.2515, 171.252; BLACK's LAW DICTIONARY 450 (8th ed. 2004). If the entity pays the franchise taxes that it owes or files the franchise-tax report that is past-due and the entity has its corporate privileges or right to transact business in Texas revived, then the entity may sue or defend in a Texas court.[6] *See* Tex. Tax Code Ann. §§ 171.2515, 171.252, 171.258; BLACK's LAW DICTIONARY 450 (8th ed. 2004). In the most recent word on the subject, the Supreme Court of Texas concludes that under the unambiguous language of the predecessor statute to section 171.252, a corporate entity whose right to transact business in Texas has been forfeited and not revived does not have the right to defend itself in a Texas court.

The majority relies upon the Supreme Court of Texas precedent created decades

---

**6.** The Turnaround Parties have not asserted on appeal that the Plaintiffs used an improper procedural vehicle to raise their argument under Tax Code section 171.252 or that the General Partner should have been given an opportunity to have its right to transact business in Texas revived.

ago when the high court refused a writ of error to review the Ninth Court of Appeals's two-page opinion in *Bryan v. Cleveland Sand & Gravel. See* 139 S.W.2d 612 (Tex.Civ.App.–Beaumont 1940, writ ref'd). In *Bryan,* the court of appeals did not quote or mention the text of article 7091 of the Texas Revised Civil Statutes, a predecessor statute to section 171.252. *See id.* at 612–13. Even though the language of the predecessor statute was substantially similar to the language of section 171.252, the court of appeals summarily concluded that the statute did not prevent a defendant corporation whose right to do business in Texas had been forfeited from defending a case in a Texas court. *See id.* at 612–13; *Jordan v. Grandfield Bridge Co.*, 290 S.W. 866, 869 (Tex.Civ.App.–Fort Worth 1926, no writ) (quoting predecessor statute). The court of appeals proceeded as if the applicable statute prevented a corporation whose right to do business in Texas had been forfeited only from suing in a Texas court, as opposed to suing and defending in a Texas court. *See Bryan,* 139 S.W.2d at 612–13.

Eleven years later, the Supreme Court of Texas concluded that under the same predecessor statute, the effect of a "forfeiture of the right of the corporation to do business in this state . . . is to prohibit the corporation from doing business and to deny to it the right to sue or defend in any court of the state except in a suit to forfeit its charter." *Humble Oil & Refining Co. v. Blankenburg,* 149 Tex. 498, 235 S.W.2d 891, 894 (1951). The Fourteenth Court of Appeals cases upon which the majority relies do not cite or apply the *Blankenburg* case, and we are bound by *Blankenburg*

rather than by our own cases or by the *Bryan* case. *See id.*

**Before reversing the trial court's judgment and remanding for a new trial, this court must consider and overrule all of the appellate issues that would result in rendition of judgment on appeal.**

Under at least six of their fifteen appellate issues, the Turnaround Parties argue that the evidence is legally insufficient to support a finding as to one or more essential elements of one of the Plaintiffs' claims or vicarious-liability theories.[7] In its analysis, the majority addresses the Turnaround Parties' argument under their tenth issue, finds the argument has merit, and concludes that "the evidence is legally insufficient to hold the Turnaround Parties liable for fraudulent inducement."[8] Yet, despite holding that the evidence is legally insufficient to support the Plaintiffs' fraudulent-inducement claims, the court reverses the trial court's judgment and remands for a new trial rather than rendering judgment that the Plaintiffs take nothing on their fraudulent-inducement claims. Although the Turnaround Parties assert a number of legal-insufficiency arguments, the majority concludes it is unnecessary to address most of them.[9] The court takes both actions based on its conclusion that, by failing to expressly request a rendition of judgment, the Turnaround Parties have waived their entitlement to rendition of judgment as to the claims they argue are supported by legally insufficient evidence.[10] This conclusion is contrary to (1) this court's binding precedent, (2) the rules of appellate procedure, (3) the efficient use of judicial resources, (4) principles of con-

---

7. At a minimum, the Turnaround Parties make such arguments under their fourth, eighth, ninth, tenth, eleventh, and twelfth issues.

8. *Ante* at 452.

9. *See post* at 448.

10. *See post* at 456–58.

sistency, and (5) the Turnaround Parties' statements during oral argument.

***Under binding precedent, this court must reverse and render a take-nothing judgment if an appellant shows the evidence is legally insufficient to support an essential element of a claim on appeal of a judgment after a bench trial, even if the appellant did not expressly request rendition in the appellate brief.***

If a trial court renders judgment against a defendant following a bench trial, and the defendant shows on appeal that the evidence is legally insufficient to support an essential element of one of the plaintiff's claims, the proper appellate course is to reverse and render judgment that the plaintiff take nothing on that claim. *See Dallas Nat'l Ins. Co. v. De La Cruz*, 470 S.W.3d 56, 59 (Tex.2015) (per curiam). For at least thirty-two years, the Fourteenth Court of Appeals has followed the *Olin* Rule, which holds that, if an appellant shows error in the trial court's judgment, this court should render the proper appellate judgment for that error, even if the appellant did not expressly request that appellate relief in appellate briefing.[11] There is an exception to the *Olin* Rule; if the appellant expressly states that it does not want a particular appellate remedy,

then this court will not award the remedy that the appellant expressly rejected and will affirm even the erroneous part of the judgment if the appellant expressly rejects all proper appellate remedies.[12]

The majority acknowledges that this court may reverse and remand even if an appellant never requested a remand in its briefing, if the appellant shows the trial court erred and if reversal and remand is the appropriate judgment.[13] Nonetheless, the majority asserts that this court cannot reverse and render unless an appellant requested this relief in its briefing, even if the appellant shows the trial court erred and even if reversal and rendition is the appropriate remedy for this error.[14] In support of this proposition, the majority cites this court's opinions in three cases: *Enzo Investments, L.P. v. White, Advanced Personal Care, L.L.C. v. Churchill*, and *Garza v. Cantu*.[15] In each of these cases, this court followed established precedent and held that the court could render an appropriate appellate judgment, even though the appellant requested only a reversal and rendition of a take-nothing judgment, which was not a proper appellate judgment.[16] The majority cites these three cases for the proposition that this

---

11. *See, e.g., Garza v. Cantu*, 431 S.W.3d 96, 108–10 (Tex.App.–Houston [14th Dist.] 2013, pet. denied) (holding that appellant who shows an error in the judgment entitling appellant to a reversal and remand is entitled to that appellate remedy, even if the appellant requested a rendition in its appellate briefing and did not request a remand) (sub. op.); *Olin Corp. v. Dyson*, 678 S.W.2d 650, 657 (Tex.App.–Houston [14th Dist.] 1984) (holding that appellant who shows the evidence is legally insufficient to support the judgment on a claim is entitled to the appellate remedy of a reversal and rendition of judgment in appellant's favor, even if the appellant did not request a rendition in its appellate briefing), *rev'd on other grounds*, 692 S.W.2d 456 (Tex. 1985).

12. *See Crotts v. Cole*, 480 S.W.3d 99, 106 n. 9 (Tex.App.–Houston [14th Dist.] 2015, no pet.); *Garza*, 431 S.W.3d at 109.

13. *See post* at 456.

14. *See id.*

15. *See Enzo Investments, L.P. v. White*, 468 S.W.3d 635, 654 (Tex.App.–Houston [14th Dist.] 2015, pet. denied) (sub. op.); *Advanced Personal Care, L.L.C. v. Churchill*, 437 S.W.3d 41, 49 (Tex.App.–Houston [14th Dist.] 2014, no pet.); *Garza*, 431 S.W.3d at 108–10.

16. *See Enzo Investments, L.P.*, 468 S.W.3d at 654; *Advanced Personal Care, L.L.C.*, 437 S.W.3d at 49; *Garza*, 431 S.W.3d at 108–10.

court cannot grant more relief than the appellant requested.[17] But, in none of these cases did the court ever assert such a proposition.[18]

In three other cases, this court has addressed whether the court may reverse and render on appeal, if that is the proper appellate judgment for the error shown by the appellant, even though the appellant did not expressly request that appellate relief in appellate briefing.[19] In each of these cases, the court held that this court should reverse and render if that is the appropriate appellate judgment for the error shown by the appellant, even if the appellant sought only a reversal and remand in its briefing.[20] The majority attempts to distinguish the *Olin* case, arguing that there was no issue before the court in *Olin* as to whether the appellant could obtain the unrequested appellate relief of a reversal and rendition of judgment.[21] The majority concludes this issue was not before the *Olin* court because the *Olin* court concluded that the evidence was legally sufficient.[22] But, if a failure to ex-

pressly request rendition in the appellant's brief waived the legal-sufficiency issue (as the majority maintains), then the *Olin* court would not have needed to address whether the evidence was legally sufficient.[23] The *Olin* court held that an appellant who shows the evidence is legally insufficient to support the judgment on a claim is entitled to the appellate remedy of a reversal and rendition of judgment in the appellant's favor, even if the appellant did not ask for a rendition in its appellate briefing.[24] Before addressing the merits of the appellant's rendition issue, the *Olin* court first concluded that the appellant had not waived its rendition issue.[25]

The majority's conclusion that this court may not reverse and render unless that remedy is expressly requested in the appellant's briefing is contrary to this court's binding precedent (including two cases decided earlier this year) and would require either an affirmance or the reversal and remand for a new trial of a claim that fails as a matter of law because of the appel-

17. *See post* at 456.

18. *See Enzo Invs.*, 468 S.W.3d at 650–55; *Advanced Personal Care, L.L.C.*, 437 S.W.3d at 49; *Garza*, 431 S.W.3d at 108–10.

19. *See In re Marriage of Day*, 497 S.W.3d 87, 92, n. 5, 2016 WL 2997141, at *4, n. 5 (Tex. App.–Houston [14th Dist.] May 24, 2016, no pet. h.) (holding that court of appeals would affirm as modified after deleting challenged award (which is equivalent to a reversal and rendition in part) because that was the appropriate appellate judgment, even though the appellant only had requested a reversal and remand); *Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 452 (Tex.App.–Houston [14th Dist.] 2016, pet. filed) (holding that court of appeals would reverse and render because that was the appropriate appellate judgment, even though the appellant only had requested a reversal and remand); *Olin Corp.*, 678 S.W.2d at 657 (holding that an appellant who shows the evidence is legally insufficient to support the judgment on a claim is entitled to

the appellate remedy of a reversal and rendition of judgment in appellant's favor, even if the appellant did not request a rendition in its appellate briefing).

20. *See In re Marriage of Day*, 497 S.W.3d at 92, n. 5, 2016 WL 2997141, at *4, n. 5; *Alta Mesa Holdings, L.P.*, 488 S.W.3d at 452; *Olin Corp.*, 678 S.W.2d at 657.

21. *See post* at 456.

22. *See id.*

23. *See Olin Corp.*, 678 S.W.2d at 657 (holding that an appellant who shows the evidence is legally insufficient to support the judgment on a claim is entitled to the appellate remedy of a reversal and rendition of judgment in appellant's favor, even if the appellant did not request a rendition in its appellate briefing).

24. *See id.*

25. *See id.*

lant's failure to expressly request rendition.[26]

The majority asserts that this panel should not follow these three precedents because they conflict with three Supreme Court of Texas precedents. [27] But, none of these cases abrogates or conflicts with the *Olin* Rule.[28] In *Texas Parks and Wildlife Department*, the Sawyer Trust argued that it had asserted a constitutional-takings claim against the defendant state agency in the trial court.[29] The high court concluded that the Sawyer Trust had asserted only a trespass-to-try-title claim and not a takings claim because it sought nonmonetary relief to establish its title to real property.[30] The Supreme Court of Texas concluded that, whether the State owned the property or the Sawyer Trust owned the property, there could be no entitlement to compensation for a taking as a matter of law. [31] The high court then indicated that because of this reality, the Sawyer Trust had not requested an opportunity to replead to assert a compensation claim.[32] The *Texas Parks and Wildlife Department* court then stated that "[g]enerally, a party is not entitled to relief it does not request."[33] In the context of the opinion, the statement appears to be an obiter dictum because the court already had determined that, as a matter of law, the Sawyer Trust could not plead a takings claim. [34] In addition, the Sawyer Trust was the respondent in the Supreme Court of Texas, not the petitioner, and the Sawyer Trust did not brief its entitlement to a remand for an opportunity to replead in the trial court.[35] This context is very different from a court-of-appeals appellant who has briefed meritorious issues entitling the appellant to a rendition but failed to expressly request a rendition. [36] In any event, the high court used the word "generally" and did not reach a holding or judicial dicta as to how intermediate courts of appeal determine which appellate judgment is appropriate and available. [37]

In *State v. Brown*, Brown sought attorney's fees and litigation expenses, but did not request sanctions in either the trial court or on appeal.[38] The *Brown* court stated that Brown did not seek a remand for the trial court to consider sanctions and that a party "generally" is not entitled to relief it does not seek.[39] The high court specifically determined that Brown was not entitled to a remand to seek sanctions and did not articulate a legal standard to

---

26. *See In re Marriage of Day*, 497 S.W.3d at 92, n. 5, 2016 WL 2997141, at *4, n. 5; *Alta Mesa Holdings, L.P.*, 488 S.W.3d at 452; *Crotts*, 480 S.W.3d at 106 n. 9; *Enzo Invs.*, 468 S.W.3d at 650–55; *Advanced Personal Care, L.L.C.*, 437 S.W.3d at 49; *Garza*, 431 S.W.3d at 109; *Olin Corp.*, 678 S.W.2d at 657.

27. *See ante* at 456.

28. *See Tex. Parks and Wildlife Dept. v. Sawyer Trust*, 354 S.W.3d 384, 392 (Tex.2011); *State v. Brown*, 262 S.W.3d 365, 370 (Tex.2008); *Stevens v. National Education Centers*, 11 S.W.3d 185, 185 (Tex.2000) (per curiam).

29. *See Tex. Parks and Wildlife Dept.*, 354 S.W.3d at 390.

30. *See id.* at 390–92.

31. *See id.* at 392.

32. *See id.*

33. *Id.*

34. *See id.*

35. *See id.*

36. *See id.*

37. *See id.*

38. *See* 262 S.W.3d 365, 370 (Tex.2006).

39. *See id.*

apply to all high court proceedings.[40] As in *Texas Parks and Wildlife Department,* Brown was the respondent in the Supreme Court of Texas, not the petitioner, and Brown did not brief his entitlement to a remand for an opportunity to seek sanctions in the trial court.[41] This context is very different from a court-of-appeals appellant who has briefed meritorious issues entitling the appellant to a rendition but failed to expressly request a rendition.[42] In any event, the high court used the word "generally" and did not reach a holding or judicial dicta as to how intermediate courts of appeals determine which appellate judgment is appropriate and available.[43]

In *Stevens v. National Education Centers, Inc.,* the Supreme Court denied a petition for review because remand was the proper remedy and the petitioner "specifically requested that th[e] Court not remand for a new trial." 11 S.W.3d 185, 185 (Tex.2000) (per curiam). *Stevens* is consistent with the *Olin* Rule, under which an appellant can waive a potential appellate remedy by express language in the appellant's brief.[44]

None of the Supreme Court of Texas cases conflict with or address the *Olin* Rule.[45] To date, the high court has not addressed whether the *Olin* Rule is the correct legal standard in the context of judgment formation in the courts of appeals.

### *The Olin Rule comports with the Rules of Appellate Procedure.*

Texas Rule of Appellate Procedure 43.3 provides that "[w]hen reversing a trial court's judgment, [the court of appeals] *must* render the judgment that the trial court should have rendered," except in two cases in which the court of appeals should remand to the trial court.[46] This rule does not say that the court of appeals must render the judgment that the trial court should have rendered if the appellant expressly requested this relief in its brief.[47] Texas Rule of Appellate Procedure 38.1(j), provides that "The brief must contain a short conclusion that clearly states the nature of the relief sought."[48] But, this rule does not state that the court of appeals may grant only the appellate relief requested in the appellant's brief.[49] Under Texas Rule of Appellate Procedure 44.3, "A court of appeals must not affirm or reverse a judgment or dismiss an appeal for formal defects or irregularities in ap-

---

**40.** *See id.*

**41.** *See id.*

**42.** *See id.*

**43.** *See id.*

**44.** *See id.; Crotts,* 480 S.W.3d at 106 n. 9; *Garza,* 431 S.W.3d at 108–10.

**45.** In the *Horrocks* case in which the Supreme Court of Texas held that reversal and remand is the appropriate appellate judgment when the only means by which the appellant preserved error in a jury case was through a motion for new trial. *See Horrocks v. Tex. Dep't of Transp.,* 852 S.W.2d 498, 498–99 (Tex.1993) (per curiam). The high court did not address whether a court of appeals should render the appropriate appellate judgment for the error shown by the appellant even if the appellant did not expressly request that appellate judgment in its briefing. *See id.* Today's case involves an appeal from a judgment after a bench trial. Therefore, the Turnaround Parties did not have to preserve error in the trial court, and, in any event, the Turnaround Parties did not file a motion for new trial. *See* Tex. R. App. 33.1(d). The *Horrocks* case is not on point. *Garza,* 431 S.W.3d at 109 (distinguishing *Horrocks*).

**46.** Tex. R. App. P. 43.3 (emphasis added).

**47.** *See id.*

**48.** *See* Tex. R. App. P. 38.1(j).

**49.** *See id.*

pellate procedure without allowing a reasonable time to correct or amend the defects or irregularities."[50] In addition, the Supreme Court of Texas has instructed that the courts of appeals should construe the Rules of Appellate Procedure reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule.[51] The high court also has emphasized that appellate courts must construe issues presented liberally to obtain a just, fair, and equitable adjudication of the rights of the litigants.[52]

Under the rule the majority applies, a court of appeals must either affirm or reverse and remand for a new trial of a claim that fails as a matter of law because of the appellant's failure to expressly request rendition, even though the appellant showed in its appellate brief that the evidence is legally insufficient to support a recovery on that claim. This rule is not absolutely necessary to effect the purpose of any appellate rule, and it is contrary to

the mandate of Rule 43.3.[53] Unlike the rule the majority applies, the *Olin* Rule comports with the Rules of Appellate Procedure.[54]

### The Olin Rule furthers the judicial economy sought by the greatest-degree-of-finality rule.

If more than one appellate judgment is potentially appropriate based on the record, the briefs, and the law, an appellate court must render the judgment that moves the case to the greatest degree of finality.[55] This longstanding rule furthers judicial economy.[56] To honor this important purpose and to comply with the greatest-degree-of-finality mandate, a court of appeals first must consider and reject all arguments that would entitle the appellant to the greatest relief potentially available, before rendering an appellate judgment granting the appellant lesser relief.[57] Thus, before this court may order a remand, the court is duty-bound to consider and reject all arguments which, if meritorious, would result in a rendition.[58] If, as the Turn-

**50.** *See* Tex. R. App. P. 44.3.

**51.** *Republic Underwriters Ins. Co. v. Mex–Tex, Inc.*, 150 S.W.3d 423, 427 (Tex.2004).

**52.** *Perry v. Cohen*, 272 S.W.3d 585, 588 (Tex. 2008).

**53.** *See* Tex. R. App. P. 43.3; *Garza*, 431 S.W.3d at 108–10.

**54.** *See* Tex. R. App. P. 43.3; *Garza*, 431 S.W.3d at 108–10.

**55.** *See Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 201 (Tex.2003); *Ortega v. CACH, LLC*, 396 S.W.3d 622, 627 (Tex.App.–Houston [14th Dist.] 2013, no pet.).

**56.** *See Natural Gas Pipeline Co. of Am.*, 124 S.W.3d at 201; *Monsanto Co. v. Davis*, 25 S.W.3d 773, 780 (Tex.App.-Waco 2000, pet. denied) (stating that "[j]udicial efficiency requires us to first rule upon the complaints brought by [appellants] which would entitle them to the greatest relief").

**57.** *See Natural Gas Pipeline Co. of Am.*, 124 S.W.3d at 201–02; *Monsanto Co.*, 25 S.W.3d at 780.

**58.** *See Natural Gas Pipeline Co. of Am.*, 124 S.W.3d at 201–02 (holding that, although dissenting justice asserted that court should sustain remand issue, court could not do so because it was required to reverse and render based on meritorious rendition argument); *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex.2000) (concluding that, because rendition point had merit court would not address issue which, if sustained would result only in a remand); *Bradleys' Electric, Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 676–77 (Tex.1999) (holding that the court of appeals erred in sustaining a remand issue without determining whether a rendition issue had merit); *Ortega*, 396 S.W.3d at 627 (stating that "[w]hen an appellant asserts multiple grounds for reversal of the trial court's judgment, this court should first address all issues that would require rendition and then, if necessary, consider issues that would result in

around Parties argue on appeal, the evidence is legally insufficient to support one or more essential elements of a number of the Plaintiffs' claims, then it would be a waste of judicial resources and the parties' resources to reverse the trial court's judgment and remand for a second trial on these claims.[59]

**Even under the majority's rule this court may reverse and render based on the appellants' statements during oral argument.**

Even if this court were not bound to follow the *Olin* Rule, this court still should consider all of the Turnaround Parties' legal-sufficiency arguments before reversing and remanding based on statements of the Turnaround Parties' counsel at oral argument. Though the Turnaround Parties focused on remand points during oral argument, one of their attorneys stated during oral argument that the Turnaround Parties also were asserting "reasons for rendering parts of the judgment" but that, at a minimum, the Turnaround Parties were entitled to a reversal and remand. Thus, the Turnaround Parties showed at oral argument that they are seeking a partial rendition of judgment based on their legal-insufficiency arguments.

### Conclusion

The appellants' fifteenth-issue challenge to the trial court's purported granting of a default judgment is moot because the trial court did not grant the Plaintiffs' request for default judgment in its final judgment. The trial court's plenary power had expired when it signed the findings of fact and conclusions of law stating the trial court would enter a default judgment. Because the findings of fact and conclusions of law could not modify the trial court's final judgment, the trial court did not grant a default judgment against the defendant in question. The fifteenth issue is moot.

The majority incorrectly concludes that a corporate entity has the right to defend itself in a Texas court even if the entity's right to transact business in Texas has been forfeited under subchapter F of Tax Code chapter 171 and has not been revived. Under the plain wording of Tax Code section 171.252 and precedent from the Supreme Court of Texas, a corporate entity whose right to transact business in Texas has been forfeited under subchapter F of Tax Code chapter 171 and has not been revived does not have the right to defend itself in a Texas court.

Under this court's binding precedent, if an appellant shows that the evidence is legally insufficient to support an essential element of a claim, this court should reverse and render a take-nothing judgment on that claim, even if the appellant did not outright ask for that appellate relief in its briefing. Therefore, this court must ad-

---

remand" and considering and rejecting all rendition issues before sustaining a remand issue); *Monsanto Co.*, 25 S.W.3d at 780 (stating that "[j]udicial efficiency requires us to first rule upon the complaints brought by [appellants] which would entitle them to the greatest relief"); *Forbes v. Lanzl*, 9 S.W.3d 895, 898 n. 3 (Tex.App.–Austin 2000, pet. denied) (stating "[w]e decide rendition issues before remand issues" and sustaining rendition issue without addressing remand issue); *Stevenson v. Koutzarov*, 795 S.W.2d 313, 322 (Tex.App.–Houston [1st Dist.] 1990, writ denied) (stating "[w]e must, however, address

the points which, if granted, would compel a rendition of judgment for the [appellants]").

**59.** *See Bradleys' Electric, Inc.*, 995 S.W.2d at 676–77 (Tex.1999) (holding that the court of appeals erred in sustaining a remand issue without determining whether a rendition issue had merit); *Monsanto Co.*, 25 S.W.3d at 780 (stating that "[j]udicial efficiency requires us to first rule upon the complaints brought by [appellants] which would entitle them to the greatest relief").

dress all of the Turnaround Parties' legal-insufficiency arguments before concluding that all claims should be remanded to the trial court for a new trial.