# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00553-CV

**Christopher Caviness, Appellant**

**v.**

**High Profile Promotions, Inc., Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT NO. D-1-GN-14-000655, HONORABLE TODD T. WONG, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

High Profile Promotions, Inc. ("High Profile") sued Christopher Caviness for breach of contract and for breach of the implied warranty of merchantability brought under the Texas Deceptive Trade Practices Act (DTPA), alleging that Caviness failed to design and develop a web portal for High Profile in accordance with the parties' agreement. Following a bench trial, the trial court signed a final judgment awarding actual damages and attorney's fees to High Profile. Caviness timely filed a notice of appeal challenging, in part, the jurisdiction of the trial court and the sufficiency of the evidence supporting High Profile's DTPA claim. For the reasons that follow, we will affirm the trial court's judgment.

## BACKGROUND

High Profile is a Texas corporation that operates a "full service talent and promotional modeling agency" based in Austin, Texas. According to High Profile, its business consists of hiring and providing models to promote events, such as trade shows, banquets, and golf tournaments. To assist in its business operations, High Profile uses an online web portal "to allow its customers and models to book and view customer engagements or events." At trial, Malissa Markley, president of High Profile, explained that the web portal also allows the models to fill out a "recap" after a particular event, providing certain details for the client about the event, such as "how many customers, how many people sampled, customer comments, [and] how many people bought the product."

In September 2012, High Profile met with Caviness, a web developer, to discuss the potential development of a new web portal to replace High Profile's existing portal. At the conclusion of the meeting, High Profile and Caviness orally agreed that Caviness would develop the new web portal and bill High Profile at a rate of $75 per hour, and Caviness estimated that he could complete the project for $30,000 to $40,000. Caviness began billing High Profile for his work on the project that same month.

The projected launch date for High Profile's new web portal was January 2013, but the launch was postponed after problems arose during a preliminary demonstration. From January to June 2013, Caviness continued to design and develop the portal, and High Profile managers continued to test the portal and then communicate by e-mail with Caviness regarding issues. According to High Profile area manager Kimberly Howerton, High Profile managers would report discovered problems to Caviness, who would report back that "he had worked out bugs in the system," but the system still would not operate as needed.

2

The web portal eventually went "live" in June 2013, and according to High Profile, it immediately experienced numerous problems with its operation. Among other things, "recaps, a critical part of [High Profile's] business operations, often would not match to the correct event," and according to Howerton, this failure of the recapping functionality prevented High Profile from being able to invoice its clients and, as a result, from paying its models. By mid-July of 2013, after continued problems with the new web portal, High Profile made the decision to discontinue Caviness's services, abandon the project, and revert back to using its old web portal.

In March 2014, High Profile filed suit against Caviness, asserting a breach-of-contract claim and a DTPA claim for breach of warranty and seeking to recover actual damages and attorney's fees. Representing himself pro se, Caviness filed an "original answer," in which he generally denied all of High Profile's allegations; stated that he was not a resident of Texas; broadly challenged the court's "jurisdiction and venue"; and moved for a dismissal of High Profile's claims on grounds that the claims were "based on improper jurisdiction and venue," "baseless causes of action," "unenforceable [and] unlawful," and an "attempt to perpetuate a fraud." Caviness also asserted various counterclaims, including breach of contract, and requested awards of actual and exemplary damages along with injunctive relief.

Following a bench trial, the trial court signed a final judgment ordering that Caviness take nothing on his counterclaims and awarding High Profile $99,184.34 in actual damages, plus attorney's fees. At Caviness's request, the trial court filed findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296 (requests for findings of fact and conclusions of law). Among other things, the trial court determined that Caviness (1) breached an oral contract with High Profile to develop

3

a web portal, (2) breached the implied warranty of merchantability, and (3) committed a DTPA violation against High Profile, a consumer under the DTPA. With respect to damages, the trial court found that High Profile had incurred out-of-pocket damages in the amount it had paid to Caviness, $88,553.00, and that High Profile had incurred consequential damages in the amount of the web-hosting fees it had paid from December 2012 to March 2015, $12,731.34. Based on its findings of fact, the trial court concluded, in part, that:

[1.]  [Caviness] is liable to [High Profile] for the principal sum of $101,284.34, less a credit that the Court granted to [Caviness] for work he performed in assisting in the recovery of [High Profile's] website, for a total of $99,184.34 in damages.

[2.]  [High Profile] is entitled to its reasonable attorney's fees in the amount of $19,387.80.

Representing himself pro se in this appeal, Caviness raises what he identifies in his brief as thirteen discrete legal issues. In general, Caviness challenges the final judgment of the trial court on grounds that (1) the court lacked subject-matter jurisdiction over the dispute; (2) the court lacked plenary jurisdiction when it signed the final judgment, and consequently, the judgment is void; (3) the trial court erred in concluding that Caviness's special appearance was unsworn and waived; (4) the evidence is insufficient to support the trial court's award of consequential damages; and (5) the evidence is insufficient to support the trial court's findings supporting liability under the DTPA.

4

## ANALYSIS

### I. Briefing Waiver

As a preliminary matter, we first address High Profile's argument that Caviness's brief wholly fails to comply with appellate briefing requirements under Texas Rule of Appellate Procedure 38 and that, as a result, he has failed to preserve any issue for our review.

Rule 38 expressly sets forth what must be included in an appellant's brief. *See* Tex. R. App. P. 38 ("Requisites of Briefs"). In part, the Rule requires that an appellant's brief "state concisely all issues" to be decided by the appellate court and "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." *Id.* R. 38.1(f), (i). An appellant's brief must "articulate the question to be answered" and then "guide [the court] through the appellant's argument with clear and understandable statements of the contentions being made." *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 896 (Tex. App.—Dallas 2010, no pet.). "An appellate court has no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error." *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.). In addition, we are required to hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure. *Amir-Sharif v. Mason*, 243 S.W.3d 854, 856 (Tex. App.—Dallas 2008, no pet.) (citing *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978)). To do otherwise would give pro se litigants an unfair advantage over litigants represented by counsel. *Mansfield,* 573 S.W.2d at 185.

Applying this standard to Caviness's appellate brief, we conclude that with respect to many of his issues, Caviness fails to articulate a clear legal issue to be decided or, to the extent

5

we can discern a cognizable issue, to make understandable arguments in support of his position. Many of the arguments presented by Caviness in support of various issues are repetitive, and several of the issues appear to overlap in that they turn on the same argument. Moreover, Caviness often fails to identify any controlling legal principle or authority and does not cite or even reference the relevant portions of the record. Accordingly, we will decide the issues before us to the extent we can discern them; any issues not specifically addressed are considered waived. *See Caldwell v. Garfutt*, No. 03-14-00019-CV, 2016 Tex. App. LEXIS 62, at *11 (Tex. App.—Austin Jan. 7, 2016, pet. denied) (mem. op.) (addressing "issues [raised by pro se appellant] as best as we can"); *see also Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex. 1983) ("Points of error must be supported by argument and authorities, and if not so supported, the points are waived.").

Because they are potentially dispositive of this appeal, we begin by considering Caviness's challenges to the trial court's jurisdiction, including Caviness's complaint that the trial court erred in failing to consider the merits of his special appearance.

## II. Subject-Matter Jurisdiction

In two issues on appeal, Caviness asserts that the trial court lacked subject-matter jurisdiction over the Plaintiff's claims. First, Caviness asserts that the "trial court erred in denying [his] challenge to subject matter jurisdiction [and] challenge to [High Profile's] standing to bring suit for damages." According to Caviness, the evidence shows that High Profile is subject to a third-party licensing agreement under which High Profile agreed to waive "all rights to damages from any other party who may modify the software" and "voluntarily took upon themselves complete assumption of risk." Similarly, in a second issue, Caviness asserts that High Profile lacks standing

6

because it is not "personally aggrieved," having "voluntarily waived [its] rights to recover any damages . . . and voluntarily assumed all risk, burden and cost."

To adequately preserve an error for review on appeal, Rule 33.1 of the Texas Rules of Appellate Procedure requires the record to show (1) that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint, and (2) that the trial court expressly or implicitly ruled on the request, objection, or motion. *See* Tex. R. App. P. 33.1. Here, Caviness filed with the district clerk a "challenge to plaintiff's standing, bar due to assumption of risk, statute of frauds, plea to jurisdiction, illegal agreement, and motion to dismiss." In this filing, Caviness made the same complaints regarding subject-matter jurisdiction that he now presents in this appeal. The record does not reveal, however, that Caviness brought these complaints to the attention of the trial court or that he obtained a ruling on them. *See id.*

In addition, although a challenge to subject-matter jurisdiction may be raised for the first time on appeal, *see, e.g., Rusk State Hosp. v. Black*, 392 S.W.3d 88, 103 (Tex. 2012), we will not consider the merits of Caviness's "jurisdictional" issues in this appeal. Subject-matter jurisdiction refers to the court's power to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000); *Assignees of Best Buy v. Combs*, 395 S.W.3d 847, 860 (Tex. App.—Austin 2013, pet. denied). Although Caviness frames his complaints as challenges to the court's subject-matter jurisdiction, they are more properly characterized as challenges to High Profile's ability to sue. At its core, Caviness's "jurisdictional" argument is that High Profile's claims against him are contractually barred or waived, which goes to the merits of the case and not to the court's power to

7

decide the case. *See Yasuda Fire & Marine Co. of Am. v. Criaco*, 225 S.W.3d 894, 898 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (concluding that issue regarding third-party's lack of "standing" to enforce contract was not jurisdictional because it did not "affect[] the court's power to make a legal decision or enter a judgment"). Because Caviness has failed to preserve these arguments for appeal, we will not address them.

## III. Personal Jurisdiction

Next, we consider Caviness's challenges to the trial court's ruling on his special appearance. As previously discussed, in response to High Profile's original petition, Caviness filed an original answer and asserted, in part, that he "is not a resident of Texas." High Profile then filed a supplemental petition in which it specially excepted to many of Caviness's counterclaims and reiterated allegations in its original petition that, in its view, establish the trial court's personal jurisdiction over Caviness. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007) (plaintiff has initial burden of pleading sufficient allegations to bring nonresident defendant within personal jurisdiction of Texas court under Texas long-arm statute). Specifically, High Profile pleaded that Caviness comes within the reach of the Texas long-arm statute because he "entered into a contract with [High Profile], a Texas resident, that is performable in whole or in part by either party in Texas."[1] *See* Tex. Civ. Prac. & Rem. Code § 17.042 (Texas long-arm statute). Caviness then

---

[1] Under the Texas long-arm statute, the jurisdiction of Texas courts extends to any nonresident who "does business" in this state, including a nonresident who "(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; (2) commits a tort in whole or in part in this state; or (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." Tex. Civ. Prac. & Rem. Code § 17.042.

8

filed a "response to plaintiff's supplemental [petition]," purporting to clarify that his challenge to the court's jurisdiction (as presented in his original answer) constituted a special appearance. *See* Tex. R. Civ. P. 120a (allowing party to specially appear for limited purpose of challenging personal jurisdiction). Caviness also stated in his response that he "never has been a Texas citizen or resident" and demanded that the court dismiss High Profile's suit for want of jurisdiction.

Following a hearing, the trial court declared that Caviness's original answer did not, in fact, constitute a special appearance because it did not fully comport with the particular requirements for a special appearance set forth in Texas Rule of Civil Procedure 120a and that Caviness had "waived any claim of special appearance and [had] entered a general appearance" in the suit. The trial court substantially restated these determinations in its post-judgment findings of fact and conclusions of law. On appeal, Caviness asserts that the trial court erred in denying his special appearance without considering the merits of his personal-jurisdiction challenge.

## A. Standard of Review

A court must possess personal jurisdiction over a party in order to issue a binding judgment against him. *GJP, Inv. v. Ghosh*, 251 S.W.3d 854, 867 (Tex. App.—Austin 2008, no pet.) (citing *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996)). Whether a Texas court can exercise personal jurisdiction over a nonresident defendant is a question of law. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). Under the Texas long-arm statute, the plaintiff bears the initial burden of pleading allegations sufficient to confer jurisdiction over the nonresident defendant. *Id.* at 149; *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

When this burden is met, the burden shifts to the nonresident defendant to negate all potential bases for personal jurisdiction pled by the plaintiff. *Moncrief Oil*, 414 S.W.3d at 149.

In making a jurisdictional determination, the trial court must frequently resolve questions of fact. *Id.* When a trial court issues findings of fact and conclusions of law, we may review the fact findings for both legal and factual sufficiency. *Id.* When, as in this case, the defendant does not file an interlocutory appeal from the trial court's special-appearance ruling but instead raises the jurisdictional challenge in an appeal from the final judgment, the scope of our review includes all the evidence before the trial court on the issue of personal jurisdiction, including the evidence presented at trial. *GJP*, 251 S.W.3d at 871-72. Once we determine that the trial court's jurisdictional fact findings are supported by sufficient evidence, or if the material facts are undisputed, we review the trial court's legal conclusions drawn from the facts to determine their correctness. *BMC*, 83 S.W.3d at 794. We review the trial court's ruling on a special appearance, including any determination of whether the defendant waived his special appearance, under a de novo standard of review. *Moncrief Oil*, 414 S.W.3d at 150; *Moore v. Pulmosan Safety Equip. Corp.*, 278 S.W.3d 27, 32 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (special-appearance waiver determination is reviewed de novo).

## B.  Waiver of Personal Jurisdiction

"Unlike subject-matter jurisdiction, which concerns a court's jurisdiction to hear a case and cannot be waived, personal jurisdiction concerns a court's jurisdiction over a particular party and can be waived." *Trenz v. Peter Paul Petrol. Co.*, 388 S.W.3d 796, 800 (Tex. App.—Houston [1st Dist.] 2012, no pet.). A defendant enters a general appearance, and therefore consents to the

10

trial court's exercise of personal jurisdiction, when the defendant (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its act that an action is properly pending, or (3) seeks affirmative action from the court. *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998). Texas Rule of Civil Procedure 120a enables a nonresident defendant to make an appearance in a Texas court for the limited purpose of objecting to the court's exercise of personal jurisdiction without making a general appearance. Tex. R. Civ. P. 120a(1). A party availing himself of Rule 120a's "special appearance" procedure must strictly comply with the Rule's requirements in order to avoid making a general appearance.[2] *Id.* ("Every appearance, prior to judgment, not in compliance with this rule is a general appearance.").

Here, the trial court concluded that Caviness had waived his special appearance because "in his original answer, [he] invoked the judgment of the court on a question other than the court's jurisdiction; recognized by his acts that an action was properly pending; and/or sought affirmative action from the Court." The trial court also concluded that Caviness's "original answer did not constitute a special appearance" because the pleading did not comport with Rule 120a's requirement that a special appearance be properly sworn, *see id.* ("Such appearance shall be made

---

[2] In part, Rule 120a includes what are commonly referred to as the due-order-of-pleading and the due-order-of-hearing requirements. *Wakefield v. British Med. Journal Publ'g Grp., Ltd.*, 449 S.W.3d 172, 179 (Tex. App.—Austin 2014, no pet.); *Trenz v. Peter Paul Petrol. Co.*, 388 S.W.3d 796, 800 (Tex. App.—Houston [1st Dist.] 2012, no pet.). To comply with the due-order-of-pleading requirement, a special appearance must be made by sworn motion and filed prior to any "motion to transfer venue or any other plea, pleading or motion." Tex. R. Civ. P. 120a(1); *Wakefield*, 449 S.W.3d at 179. To comply with the due-order-of-hearing requirement, a special appearance "shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard." Tex. R. Civ. P. 120a(2).

by sworn motion . . . ."), and because Caviness's attempt to make an unsworn declaration in lieu of verification failed to meet the particular requirements of Section 132.001(d) of the Texas Civil Practice and Remedies Code, *see* Tex. Civ. Prac. & Rem. Code § 132.001(d) (setting out requirements for unsworn declaration to be used in lieu of "written sworn declaration, verification, certification, oath, or affidavit required by . . . rule"). On appeal, Caviness asserts that the trial court erred in concluding that his special appearance failed to comport with Rule 120a and that he had waived his special appearance.

In analyzing Caviness's challenge, we will assume without deciding that the trial court erred in concluding that Caviness waived his special appearance and will begin our analysis by examining whether the trial court's exercise of personal jurisdiction was proper. In order to reverse a trial court's judgment, we must find that the trial court committed error and that the error amounted to such a denial of the appellant's rights such that it "probably caused the rendition of an improper judgment" or that it "probably prevented the appellant from properly presenting the case to the court of appeals." *See* Tex. R. App. P. 44.1(a) (standard for reversible error in civil cases); *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) ("The [harmless-error] rule applies to all errors."). Applying this standard here, any error committed by the trial court in concluding that Caviness waived his personal-jurisdiction challenge is harmless, and therefore not reversible, if the challenge when decided on the merits would be properly denied. Although the trial court did not reach the merits of Caviness's special appearance, because whether a trial court has personal jurisdiction over a nonresident defendant is a question of law, *Moki Mac*, 221 S.W.3d at 574, and because no further proceedings are necessary to resolve this question in this case, we address

12

this issue now. *See* Tex. R. App. P. 43.3, 44.1; *BMC*, 83 S.W.3d at 794 ("If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal.").

## C. Analysis of Personal Jurisdiction

A court may assert personal jurisdiction over a nonresident defendant only if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Moki Mac*, 221 S.W.3d at 574. The Texas long-arm statute authorizes service of process on a nonresident defendant "in an action arising from the nonresident's business in the state." Tex. Civ. Prac. & Rem. Code § 17.043. The broad language of the long-arm statute allows Texas courts to exercise personal jurisdiction "as far as the federal constitutional requirements of due process will allow." *Moki Mac*, 221 S.W.3d at 575. "Thus the requirements of the Texas long-arm statute are satisfied if an assertion of jurisdiction accords with federal due-process limitations." *Id*.

The exercise of jurisdiction over a nonresident defendant who has not otherwise consented to jurisdiction comports with due process when (1) the nonresident defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction complies with "traditional notions of fair play and substantial justice." *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "A defendant establishes minimum contacts when [he] 'purposefully avails [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). In

13

analyzing minimum contacts, we focus on the nonresident defendant's activities and expectations. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790 (Tex. 2005). The defendant's activities, "whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002).

In determining whether a defendant's contacts demonstrate "purposeful availment," we are guided by three considerations. *Moki Mac*, 221 S.W.3d at 575 (citing *Michiana*, 168 S.W.3d at 784-85). First, we consider only the nonresident defendant's contacts with the forum, not the unilateral activity of another party or a third person. *Id.* Second, the contacts on which jurisdiction is based must be purposeful rather than random, fortuitous, or attenuated. *Id.* "Sellers who 'reach out beyond one state and create continuing relationship with citizens of another state'" are subject to the jurisdiction of that state in suits based on their activities. *Michiana*, 168 S.W.3d at 785 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Finally, the defendant must seek some benefit, advantage, or profit by availing itself of the benefits and protections of the forum's laws. *Id.*

Entering into a single contract with a Texas resident, standing alone, does not establish minimum contacts sufficient to support jurisdiction. *Michiana*, 168 S.W.3d at 786; *Citrin Holdings, LLC v. Minnis*, 305 S.W.3d 269, 281 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Burger King*, 471 U.S. at 478-79). Instead, courts must apply a "highly realistic" approach that recognizes that a "contract . . . [is] ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the

14

business transaction." *Televentures, Inc. v. International Game Tech.*, 12 S.W.3d 900, 910 (Tex. App.—Austin 2000, pet denied) (quoting *Burger King*, 471 U.S. at 478). Thus, in determining whether a single contract is sufficient to establish minimum contacts with the forum, we examine the contract against a backdrop of "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Minnis*, 305 S.W.3d at 281 (quoting *Burger King*, 471 U.S. at 478-79); *International Game Tech.*, 12 S.W.3d at 909.

In support of his special appearance, Caviness filed an "affidavit of facts and law" in which he states, among other things, that he is not and never has been a resident of Texas, does not engage in business or maintain a place of business in Texas, has no agents or employees in Texas, and has never advertised any service or products in Texas. While these jurisdictional facts have never been disputed, the trial court's unchallenged findings of fact and the undisputed evidence presented at trial establish other facts relevant to our jurisdictional analysis. Specifically, the court's findings and the record establish that "High Profile placed an ad on Craigslist-Austin, seeking the services of a programmer to develop a web portal for use in their model management business" and stating that High Profile was seeking a person local to the Austin area. After Caviness responded to the ad, High Profile representatives met with Caviness at its Austin office to discuss the project. Although Caviness disputes that he has ever resided in Texas, the trial court's unchallenged finding, supported by Markley's testimony at trial, establishes that during the meeting, Caviness represented to High Profile that he lived in the Austin area. Caviness also represented that he could complete the requested web portal for $30,000 to $40,000. Based on Caviness's assurances, High Profile orally contracted with Caviness for the development of a new web portal, and High Profile agreed

15

to compensate Caviness at a rate of $75 per hour. For approximately nine months, Caviness billed High Profile for his work on the project and communicated with High Profile staff primarily by e-mail. During this time period, Caviness came to High Profile's Austin offices on at least two occasions, and several of Caviness's invoices to High Profile identify his address as being in Leander, Texas, which is in the Austin area. Based on these jurisdictional facts, and applying the principles provided by the Texas Supreme Court in *Michiana*, we conclude that Caviness's contacts with Texas demonstrate that he purposefully availed himself of the benefits of doing business in Texas.

First, Caviness's contacts with Texas were not "random, fortuitous, or unilateral." *See Moki Mac*, 221 S.W.3d at 575. Caviness intentionally responded to an ad, placed in a forum specific to Austin, Texas, for a company doing business in Austin, which expressly sought the services of developer who was local to the Austin area. Caviness agreed to a meeting with High Profile at its offices in Austin and, at the meeting, represented that he lived in the Austin area. Caviness's contacts in Texas were purposeful in that they suggest that Caviness deliberately reached out to Texas with the goal of obtaining business in or from Texas. *See id.* at 578 (explaining that defendant's contacts resulted from "additional conduct through which [defendant] aimed to get extensive business in or from this state").

In addition, the circumstances surrounding the contract and its formation support the exercise of personal jurisdiction. As discussed above, the contract that is the basis of High Profile's suit was fully negotiated in Texas. In addition, the contract itself contemplated an ongoing business relationship between the parties where services would be performed by Caviness in the Austin area and High Profile would be billed for those services on a periodic and continuing basis until

16

the project was completed. *See International Game Tech.*, 12 S.W.3d at 909. Thus, Caviness's

connections to Texas, including the circumstances surrounding the contract's formation and its

contemplated consequences, *see Minnis*, 305 S.W.3d at 281, are such that the Caviness could

reasonably anticipate being called into a Texas court. *See Coleman*, 83 S.W.3d at 806. Because

High Profile's breach of contract and warranty-based DTPA claims arise directly out of Caviness's

purposeful contacts with Texas, the contacts are sufficient to support the exercise of specific

jurisdiction in Texas.[3]

Having concluded that Caviness's contacts with Texas are sufficient to support the

trial court's exercise of personal jurisdiction, we next analyze whether the exercise of jurisdiction

comports with traditional notions of fair play and substantial justice. *See Moki Mac*, 221 S.W.3d

at 575. This analysis involves weighing five factors: (1) the burden on the defendant; (2) the

interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining

convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most

efficient resolution of controversies; and (5) the shared interest of the several States in furthering

fundamental substantive social policies. *Guardian Royal Exch. Assurance, Ltd. v. English China

Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991) (citing *World-Wide Volkswagen Corp. v. Woodson*,

444 U.S. 286, 292 (1980)). "Only in rare cases, however, will the exercise of jurisdiction not

comport with fair play and substantial justice when the nonresident defendant has purposefully

---

[3] The exercise of personal jurisdiction is proper if the nonresident defendant's minimum contacts give rise to either specific or general jurisdiction. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). A court may exercise specific jurisdiction over a nonresident defendant when the defendant's purposeful contacts with the forum give rise to or are related to the cause of action. *American Type Culture Collection v. Coleman, Inc.*, 83 S.W.3d 801, 807 (Tex. 2002).

17

established minimum contacts with the forum state." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 878 (Tex. 2010) (quoting *Guardian Royal*, 815 S.W.2d at 231 (citing *Burger King*, 471 U.S. at 477)). To defeat jurisdiction, the defendant must present "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Guardian Royal*, 815 S.W.2d at 231 (quoting *Burger King*, 471 U.S. at 477).

Applying the factors set out above, we conclude that the exercise of personal jurisdiction over Caviness would not offend traditional notions of fair play and substantial justice. First, requiring Caviness to litigate High Profile's claims in Texas would not impose an undue burden on him. The record shows that Caviness has traveled to Texas multiple times, and nothing in the record suggests that the burden placed on Caviness would be any greater than that ordinarily placed on nonresident defendants. *See Spir Star AG*, 310 S.W.3d at 879 (noting that distance alone is generally insufficient to defeat jurisdiction given fact that "modern transportation and communication has made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity"); *Cappuccitti v. Gulf Indus. Prods.*, 222 S.W.3d 468, 486 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (concluding that there was no undue burden on nonresident defendant when defendant traveled to Texas on several occasions, including to conduct transactions that were basis of suit). In addition, Texas has a significant interest in exercising jurisdiction to redress economic harm sustained from services purposefully sold to and purchased by Texas businesses. *See Silbaugh v. Ramirez*, 126 S.W.3d 88, 96 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("Texas has an interest in ensuring that its citizens are protected from breach of contract and tortious acts committed by nonresidents conducting business in Texas."); *see also Spir*

18

*Star AG*, 310 S.W.3d at 879 (concluding that Texas has interest in controversies arising from injuries that Texas residents sustain from products purposefully brought into Texas and contrasting with cases where neither plaintiff nor defendant are residents of forum). Also, because High Profile is a Texas business operating in Austin and because the High Profile officers and representatives who are most familiar with the underlying facts of this case are located in Texas, High Profile has a strong interest in "obtaining convenient and effective" relief in Texas. *See Spir Star AG*, 310 S.W.3d 878. Finally, nothing in the evidence suggests, and Caviness does not contend, that any other relevant fact exists, the "consideration [of which] would render jurisdiction unreasonable." *See id.* at 879.

We hold that Caviness has sufficient contacts with Texas to establish personal jurisdiction and that the exercise of that jurisdiction does not offend traditional notions of fair play and substantial justice. Therefore, even if the trial court had concluded that Caviness's special appearance was properly before it and, accordingly, had decided the special appearance on its merits, the court could only have properly concluded that the special appearance must be denied. *See* Tex. R. App. P. 44.1. Because any error committed by the trial court in concluding that Caviness's special appearance had been waived is harmless, Caviness's issues on appeal related to the trial court's ruling on his special appearance are overruled.

## IV. Plenary Jurisdiction

In one issue on appeal, Caviness argues that the trial court lacked plenary jurisdiction when it signed the final judgment because the court's plenary power expired on August 29, 2014. According to Caviness, (1) in his original answer to High Profile's suit, he included a motion to dismiss all of High Profile's claims pursuant to Rule 91a of the Texas Rules of Civil Procedure;

19

(2) under this rule, the trial court was required to rule on the motion to dismiss within 45 days; and (3) at the expiration of 45 days without a ruling, the trial court was without any authority to extend its plenary power. Assuming without deciding that Caviness's motion to dismiss was properly filed and presented to the trial court for a ruling, we cannot conclude that the trial court's failure to expressly rule on the motion resulted in a void judgment. *See* Tex. R. App. P. 33.1(a).

Rule 91a allows a party, subject to certain exceptions not applicable here, to move for early dismissal of a cause of action on the grounds that it has no basis in law or fact. *See* Tex. R. Civ. P. 91a.1. A motion to dismiss "must be . . . granted or denied within 45 days after the motion is filed." *Id.* R. 91a.3(c). The Rule, however, does not provide any consequences if a court takes no action on the motion within the prescribed period. *Koenig v. Blaylock*, 497 S.W.3d 595, 598 (Tex. App.—Austin 2016, pet. denied); *see also Reaves v. City of Corpus Christi*, 518 S.W.3d 594, 602 (Tex. App.—Corpus Christi 2017, no pet.). Accordingly, this Court has recognized that the Rule's 45-day deadline is directory, not mandatory, and does not prohibit a trial court from ruling on the merits of a motion to dismiss after the expiration of 45 days. *Blaylock,* 497 S.W.3d at 599 (holding that trial court erred in denying motion to dismiss on procedural ground that court had not ruled within 45-day period). We cannot agree, as Caviness suggests, that a trial court's failure to rule on a timely filed Rule 91a motion to dismiss within 45 days operates as an automatic dismissal or would deprive the court of jurisdiction over the challenged claims. We overrule this issue.

## V. Consequential Damages

Next, we consider Caviness's challenge to the trial court's award of consequential damages in the amount of $12,731.34, representing hosting fees from Amazon Web Services (AWS)

from December 2012 to March 2015.[4] Liberally construing Caviness's brief, we interpret Caviness's argument to be that the award of these fees was improper because High Profile failed to demonstrate that it was necessary that it incur these fees.

The trial court's made the following findings of fact relevant to the issue of the AWS hosting fees:

[1.] [Caviness] had complete control over the technical decisions for the development of the web portal. He deployed the system on Amazon Web Services ("AWS").

[2.] [Caviness] was the administrator of the system and had full access to the servers and software he used to develop the system.

[3.] [High Profile] began incurring hosting fees from AWS in December 2012. Although [High Profile] stopped using the portal in July 2013, they continued to incur hosting fees from AWS because [High Profile] relied on having availability to the data stored in the web portal.

[4.] Total fees incurred and paid to AWS by [High Profile] through March 2015, amount to $12,731.34, inclusive of credits.

On appeal, Caviness does not specifically challenge any of these underlying factual findings. In addition, the court heard testimony that Caviness had decided to use AWS to host the portal and that even after severing its relationship with Caviness, High Profile continued to use AWS to store information that was on the portal developed by Caviness. According to Todd Walker, a principal of High Profile, the information was "critical data with [High Profile's] client information and

---

[4] "Consequential damages are those which result naturally, but not necessarily, from a breach of contract. Consequential damages must be foreseeable and must be directly traceable to the wrongful act and result from it." *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997).

[High Profile's] contractor's information," and High Profile wanted the ability to later extract the data and transfer it to a working portal. As a result, High Profile paid monthly fees to AWS from December 2012 to March 2015, totaling $12,731.34. Based on our review of the record, we conclude that the trial court's unchallenged findings are supported by sufficient evidence, *see McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696-97 (Tex. 1986) (unchallenged findings of fact are binding on appellate court when supported by the record), and are sufficient to support the trial court award of $12,731.34 in consequential damages. Caviness's challenge to the trial court's award of consequential damages is overruled.

## VI. Warranty-Based DTPA Claims

Finally, we consider Caviness's challenge to the trial court's conclusion that he is liable to High Profile under the DTPA. In four issues, Caviness challenges several of the factual findings and conclusions of law made by the trial court supporting Caviness's DTPA liability, including the court's determination that Caviness "is a person that can be sued under the DTPA" and that he breached the implied warranty of merchantability. *See* Tex. Bus. & Com. Code §§ 2.314(b)(3) (uniform commercial code, implied warranty of merchantability), 17.50(a)(2) (allowing consumers to bring claims under the DTPA for breach of express or implied warranty). To obtain a reversal on these challenges, Caviness must demonstrate not only that the trial court committed error but that the error was harmful under the standard set forth in Rule 44.1 of the Texas Rules of Appellate Procedure. Assuming without deciding that the trial court erred in concluding that Caviness is liable to High Profile under the DTPA, we cannot conclude that the error is harmful.

As previously discussed, the trial court concluded that Caviness was liable for two causes of action: (1) breach of contract and (2) breach of the implied warranty of merchantability, as a violation of the DTPA. The trial court separately found that High Profile had suffered consequential damages and out-of-pocket damages totaling $101,284.34, less a credit for work performed by Caviness in assisting in the recovery of High Profile's website, resulting in a net of $99,184.34 in actual damages. The trial court awarded actual damages in this exact amount, plus attorney's fees, in its final judgment. Although the types of damages awarded by the trial court are recoverable under both causes of action, the court did not apportion the damages by cause of action. *See id.* § 17.50(b)(1), (d) (prevailing consumer on DTPA action may obtain, among other relief, economic damages and attorney's fees); Tex. Civ. Prac. & Rem. Code § 38.001(8) (attorney's fees for breach of contract). Instead, the trial court found, in substance, that all of High Profile's actual damages were caused by Caviness's breach of the contract and, alternatively, that all of High Profile's actual damages were caused by Caviness's breach of the implied warranty of merchantability. Because High Profile was successful on both of its theories of liability, it could recover all of its actual damages under either ground, but not both, and could recover all of its attorney's fees. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006) (applying "one satisfaction rule" to injury compensable under multiple theories of liability, including DTPA and breach of contract).

Based on the trial court's findings of fact and conclusions of law, we cannot conclude that any portion of the award of damages is based solely on the court's DTPA findings and conclusion. In fact, the trial court determined that High Profile was entitled to all of its damages based on Caviness's liability for breach of contract, and Caviness has not challenged any of the trial

23

court's findings with respect to contract liability. Therefore, even if Caviness could demonstrate that the trial court erred in concluding that he violated the DTPA, for any reason, he could not demonstrate that such error "probably caused the rendition of an improper judgment." *See* Tex. R. App. P. 44.1(a)(1). Also, because apportionment of damages by cause of action was not necessary or appropriate in this case, Caviness cannot show that the trial court committed error by not apportioning damages such that it "probably prevented [Caviness] from properly presenting his case" to this Court. *Id*. R. 44.1(a)(2); *cf. Zaidi v. Shah*, 502 S.W.3d 434, 439-440 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (concluding that trial court's failure to apportion cumulative damages by cause of action was reversible error because it prevented appellants from properly presenting their case on appeal (citing *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000))). Because any error committed by the trial court in concluding that Caviness is liable under the DTPA is harmless, we overrule Caviness's issues challenging his DTPA liability.

## CONCLUSION

Having overruled all of Caviness's properly preserved issues on appeal, we affirm the judgment of the trial court.

_____

Chari L. Kelly, Justice

Before Chief Justice Rose, Justices Goodwin and Kelly

Affirmed

Filed: April 5, 2019