# Court of Appeals
## Tenth Appellate District of Texas

---

### 10-24-00282-CV

---

Cheyenne Partners, LLC and Jason Alan Kitts,
Appellants

v.

Rainbow International, LLC and The Grounds Guys, LLC,
Appellees

---

On appeal from the
170th District Court of McLennan County, Texas
Judge Jim Meyer, presiding
Trial Court Cause No. 2017-2979-4

---

JUSTICE SMITH delivered the opinion of the Court.

### MEMORANDUM OPINION

Cheyenne Partners, LLC and Jason Alan Kitts appeal from the trial court's judgment rendered in favor of Rainbow International, LLC and The Grounds Guys, LLC's suit involving a Michigan franchise agreement. In four issues, Appellants contend Michigan law applies to this dispute, the evidence is insufficient to support the finding of breach of contract, Appellants

established defenses precluding judgment, and Appellants established their counterclaims. We affirm.

## BACKGROUND

Jason Kitts acquired a Rainbow franchise in Monroe, Michigan in 2009 and a second franchise in Oakland, Michigan in 2014. In late 2014, he acquired a Grounds Guys franchise. Kitts assigned the franchises to his company, Cheyenne Partners, but Kitts is the personal guarantor. While Appellants' franchises were financially successful, Kitts had a contentious relationship with Rainbow. On September 5, 2017, following months of unproductive communications between Kitts and Rainbow, Appellees filed their original petition in the 170th District Court in Waco. Rainbow sent a "Notice of Default and Intent to Terminate Franchise Agreements," dated September 8, 2017, specifying defaults and giving Appellants thirty days to remedy the defaults. Thereafter, Rainbow sent a "Notice of Final Termination of Franchise Agreement" to Appellants dated November 16, 2017.

In April 2018, Appellants filed a "Notice of Removal" in the United States District Court for the Western District of Texas, Waco Division. In December 2018, that court remanded the case back to the 170th District Court. A trial before the court was eventually held in June 2024. The trial court found that

Appellants breached their contract with Rainbow and abandoned their Grounds Guys franchise and awarded damages to Appellees.

## CHOICE OF LAW

In their first issue, Appellants contend that the trial court erred in failing to apply Michigan law, which provides protections to the franchise relationship. Without specifying which defenses and issues, they assert that Michigan's franchise protections should apply to specific defenses and issues arising under its statutory scheme.

Under Rule of Evidence 202, a party may compel a trial court to take judicial notice of another state's law by filing a motion, giving notice to other parties, and furnishing the court with sufficient information to enable it to properly comply with the request. TEX. R. EVID. 202; *Daugherty v. S. Pac. Transp. Co.*, 772 S.W.2d 81, 83 (Tex. 1989). To have foreign law applied to a case, a party must file a preliminary motion requesting application of foreign law in addition to the request to take judicial notice. *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex. App.—Corpus Christi-Edinburg 1999, pet. denied). Choice of law issues can be waived if not properly invoked. *Kubbernus v. ECAL Partners, Ltd.*, 574 S.W.3d 444, 473 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). Further, to preserve an issue for appellate review, a party must make its complaint known to the trial court by a timely request or

objection that is specific enough for the trial court to be aware of the complaint and then receive a ruling from the trial court. TEX. R. APP. P. 33.1.

Appellants assert that they adequately apprised the court of a choice of law dispute by raising the issue and providing the court sufficient information to conduct a choice of law analysis. They cited to several documents in the record arguing that in those documents they asserted that Michigan law applies, asked the court to apply it, provided the court with specific statutes on which they relied, and pointed out the differing standards under each state's laws.

The documents Appellants cited are: Defendant's Original Answer and Counterclaims filed in the United States District Court for the Western District of Texas, Waco Division; Defendant's Supplemental Response to Plaintiffs' Opposed Motion to Remand filed in the United States District Court for the Western District of Texas, Waco Division; Defendant's Response to Plaintiffs' No-Evidence Motion for Summary Judgment; Defendants' Objections to Plaintiffs' Motion for Entry of Judgment and Proposed Judgment; and Defendants' Motion for New Trial.

Two of the documents Appellants rely on were filed in federal court and therefore did not provide information to the 170th District Court. Of the documents filed in the 170th District Court, one was filed after the trial and

one was filed after the trial court rendered judgment, therefore both were untimely for purposes of raising a choice of law issue. *See DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 196-97 (Tex. App.—Fort Worth 2012, no pet.); *Colvin v. Colvin*, 291 S.W.3d 508, 514 (Tex. App.—Tyler 2009, no pet.) (motion to apply Louisiana law filed after jury was seated and with a trial set to begin within the hour was untimely); *Walters*, 1 S.W.3d at 769-70 (motions to apply Virginia law filed on eve of trial were untimely). The final document Appellants rely on is their response to Appellees' No-Evidence Motion for Summary Judgment. In their response, Appellants asserted Texas law, with one exception. While they cited to Section 445.1527 of the Michigan Franchise Investment Law, asserting they have sufficient evidence of violations of that law, they did not raise the issue of choice of laws or address differences between Michigan and Texas law.

It is undisputed that Appellants did not file a Rule 202 motion requesting the court take judicial notice of Michigan law. Although Michigan franchise law was mentioned at trial, that is insufficient to constitute a request to take judicial notice or to raise a choice of law issue. Furthermore, while cross examining a witness, Appellants' counsel asked a question referencing a Michigan law that voids any provision in a franchise agreement requiring arbitration or litigation to be conducted outside Michigan. Appellees' counsel

objected, telling the court that Appellants did not follow the process of informing the court of Michigan law. Appellants' counsel did not correct him. We conclude that nothing in the record shows that Appellants asked the court to apply Michigan law. Accordingly, Appellants' contention that Michigan law applies has been waived. *See Kubbernus*, 574 S.W.3d at 473. We overrule Appellants' first issue.

## BREACH OF CONTRACT

In part A of their second issue, Appellants argue that "many of the alleged breaches, resulting in termination and damages, are legally invalid as no notice or opportunity to cure were given." Noting that the trial court did not specify which contractual term was breached, or "articulate *which* theory the judgment rested [on]—including legally invalid ones for which no notice or opportunity to cure were provided," Appellants argue that "the judgment co-mingles and rests on legally invalid theories of recovery," requiring reversal and remand of the case for a new trial.

Apparently, Appellants' argument that some theories presented to the trial court are legally invalid rests on the application of Michigan law. As explained above, Appellants never asked the trial court to apply Michigan law. Even assuming Appellants' characterization of some theories as constituting

legally invalid theories is accurate, the theories based on Michigan law were never presented to the trial court.

Appellants label their complaint in this issue a *Casteel* problem. *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 387-89 (Tex. 2000) (op. on reh'g) (held that a jury charge is erroneous when a jury answers a single broad-form liability question affirmatively, the single liability question incorporates multiple legal theories, and at least one of those legal theories does not support liability as a matter of law and therefore is invalid). Appellants argue that co-mingling of legally invalid theories of recovery makes it impossible for Appellants or a reviewing court to discern whether the findings and judgment are predicated on a legally valid theory.

The parties' franchise agreement required notice and an opportunity to cure some of the alleged breaches but not all of the alleged breaches. Also, Appellants were given the opportunity to cure some alleged breaches. Appellants do not explain how those theories of breach requiring notice and an opportunity to cure fail to support liability as a matter of law as opposed to merely failing to support liability because they lack evidentiary support. The Texas Supreme Court has clarified that whether the *Casteel* presumption of harm applies, because a broad-form charge commingled legally valid theories or allegations with legally invalid theories or allegations, or does not apply,

because the charge commingled valid theories or allegations with theories or allegations that were invalid only because the evidence did not support them, the question on review is whether the charge probably caused an improper judgment or probably prevents the appellant from properly presenting the case on appeal. *Horton v. Kansas City S. Ry. Co.*, 692 S.W.3d 112, 145-46 (Tex. 2024). This was a nonjury trial. For purposes of our discussion, we assume the same reasoning applies in a trial before the court. *See Zaidi v. Shah*, 502 S.W.3d 434, 440 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

Here, as explained below, there is sufficient evidentiary support for some of the theories on which Appellees relied and presented to the trier of fact. Therefore, even assuming the theories requiring notice and an opportunity to cure can be labeled as invalid, comingling of those theories with other theories not requiring notice and an opportunity to cure did not cause an improper judgment or prevent Appellants from properly presenting their case on appeal. *See Horton*, 692 S.W.3d at 145-46.

In part B of their second issue, mentioning only the four alleged defaults named in Rainbow's November 16, 2017 termination letter, Appellants assert the evidence is legally and factually insufficient to support a finding of breach of contract.[1] They argue that "[t]he question is *what evidence* if any, supports

---

[1] In its findings of fact, the trial court found that Appellants breached the terms of the agreements with both Rainbow and Grounds Guys. However, Appellants never mention Grounds Guys in their

the conclusion that Rainbow notified Kitts of defaults which he then failed to cure." Regarding the allegation of failure to make note payments, Appellants assert that the testimony presented by Appellees was a guess, not based on personal knowledge. Regarding the alleged lack of tax documents, and considering testimony that Kitts did not submit the precise letters from his accountant that Rainbow wanted, Appellants contend they were in substantial compliance with the contractual requirements.

**Standard of Review**

In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them just as we would review a jury's findings. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000). We review the trial court's conclusions of law de novo; that is, we review the trial court's legal conclusions drawn from the facts to determine their correctness. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

A party who challenges the legal sufficiency of the evidence to support an issue upon which it did not have the burden of proof at trial must

---

argument in support of their second issue. Therefore, we construe the complaint to be directed solely at the breach of contract finding regarding the contract with Rainbow. However, to the extent Appellants may be asserting the evidence is insufficient to support the breach of contract finding regarding their contract with Grounds Guys, that complaint has no merit. Mary Thompson and Josh Sevick, employees of the parent company, testified that Appellants abandoned their Grounds Guys contract. Pursuant to Section 11.1.4 of the franchise agreement, the franchisor may terminate the franchise without notice if the franchisee abandons the franchised business.

demonstrate on appeal that there is no evidence to support the adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.* We credit favorable evidence if a reasonable finder of fact could, and disregard contrary evidence unless a reasonable finder of fact could not. *Id.* If there is any evidence of probative force to support the finding, i.e. more than a scintilla, we will overrule the issue. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005) (per curiam).

If a party is attacking the factual sufficiency of the evidence to support an adverse finding on an issue on which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Capps v. Nexion Health at Southwood, Inc.*, 349 S.W.3d 849, 855 (Tex. App.—Tyler 2011, no pet.). The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). In reviewing the factual sufficiency of the evidence, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998); *Cain*, 709 S.W.2d at 176. The reviewing court

may not substitute its opinion for that of the trier of fact, as it is the factfinder's role to judge the credibility of witnesses, to assign the weight afforded their testimony, and to resolve inconsistencies within or conflicts among the witnesses' testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Ford v. Panhandle & Santa Fe Ry. Co.*, 252 S.W.2d 561, 563 (Tex. 1952).

**Applicable Law**

The essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 99 (Tex. App.—Eastland 2010, pet. denied). The last element encompasses a causation requirement. *Velvet Snout, LLC v. Sharp*, 441 S.W.3d 448, 451 (Tex. App.—El Paso 2014, no pet.).

**Discussion**

In arguing the evidence is insufficient to support the breach of contract finding, Appellants mention the four alleged defaults named in the November 16, 2017 letter: failure to make note payments, submit royalty reports, provide tax returns, and maintain insurance. The failure to make note payments and maintain insurance were not alleged as grounds for breach of contract in

Appellees' petition. Therefore, it was not necessary to present evidence of those two failures.

Reports

Pursuant to Sections 3.6 and 5.7.1 of the franchise agreement, sales reports and license fee payments were required to be made weekly. Mary Thompson, Chief Operating Officer of Rainbow's parent company at the time, testified that between May 2016 and December 2016, Kitts did not submit reports. In 2017, there were twenty-three times he did not submit reports on time. He stopped reporting in March 2017. As of the date of termination, he owed eighteen reports for 2017 for his Monroe territory and thirty-five weeks of reports for his Oakland territory. When Kitts failed to send in reports, he also failed to send in required license fees. In July 2017, Rainbow sent email notifications to Kitts identifying missing reports. Pursuant to Sections 11.1 and 11.1.11 of the franchise agreement, the franchisor may terminate the agreement without providing the franchisee with notice and the opportunity to cure when he fails to comply with reporting requirements. Section 11.2.1 requires the franchisor to provide notice and an opportunity to cure for failure to promptly pay any monies owing to the franchisor. The September 8, 2017 notice of default and intent to terminate named the failure to make payments due in breach of Section 3 of the franchise agreement as a basis for default.

Financial Statements

Section 5.7.3 of the franchise agreement requires the franchisee to timely submit an income and expense statement and a balance sheet, and upon demand by the franchisor, financial statements audited by an independent certified public accountant. Thompson testified that Kitts failed to provide the audited financial statements. Pursuant to Section 11.1.10 of the franchise agreement, the franchisor may terminate the agreement without providing the franchisee with notice and the opportunity to cure when he fails to provide the required audited financial statements.

Goodwill

Liberty Mutual Insurance Company had an agreement with Rainbow whereby Rainbow franchisees would provide services for Liberty Mutual insureds. Participation by franchisees is optional but if they opt in, they must comply with the insurance company's requirements. Appellants participated in the program but failed to comply with Liberty Mutual's requirements. Therefore, Liberty Mutual suspended Kitts and Rainbow. Thompson testified that the suspension caused Rainbow to lose a substantial amount of business and damaged Rainbow's goodwill. Sections 11.1 and 11.1.8 of the franchise agreement provide that the franchisor need not provide the franchisee with

notice and the opportunity to cure if the franchisee materially impairs Rainbow's goodwill.

Appellants' Evidence

Kitts was asked by Appellees' counsel why he did not timely submit the weekly sales analysis reports. He responded with, "I don't recall exactly why each event. There was probably different reasons for each time." Kitts testified that, although the reports were delayed, he turned in the missing reports along with checks for money due. He also provided tax returns. He testified that after he received the notice of default, he cured everything.

Conclusion

There is more than a scintilla of evidence to show that Appellants breached the franchise agreement by failing to submit reports timely, failing to pay all fees due, failing to provide audited financial statements, and by impairing Rainbow's goodwill. *See Hernandez*, 164 S.W.3d at 388. Although Kitts presented some evidence that he attempted to cure the alleged defaults, he fails to acknowledge that the franchise agreement allows termination without notice and the opportunity to cure when the franchisee has failed to timely submit reports or audited financial statements, or if the franchisee materially impairs Rainbow's goodwill. Even considering Kitts' attempts to cure, the verdict is not so contrary to the overwhelming weight of the evidence

as to be clearly wrong and unjust. *See Cain*, 709 S.W.3d at 176. We overrule Appellants' second issue.

## AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

In their third issue, Appellants assert that the evidence established their affirmative defenses of fraud, including fraudulent non-disclosure, violation of Michigan law, and prior material breach. In their fourth issue, Appellants contend they established their counterclaims for fraud, breach of contract, violations of the Texas Deceptive Trade Practices Act, and violations of Michigan's Franchise Investment Law.

As mentioned above, Appellants filed their "Defendants' Original Answer and Counterclaims," which also included their affirmative defenses, in the federal court. That is the document Appellants cite to in their brief. Appellants' letter to the district court requesting items to be included in the clerk's record and filed with this Court does not include a request for "Defendants' Original Answer and Counterclaims." The clerk's record filed in this Court does not include a document entitled "Defendants' Original Answer and Counterclaims" filed in the McLennan County District Court.

Texas Rule of Appellate Procedure 34.5 dictates that, with one exception involving agreement by the parties which is not applicable here, the clerk's record must include copies of all pleadings on which the trial was held. TEX.

R. APP. P. 34.5(a). The burden is on the party seeking review to ensure that the proper record is before the Court of Appeals to show error requiring reversal. *See Walker v. Horine*, 695 S.W.2d 572, 579 (Tex. App.—Corpus Christi-Edinburg 1985, no writ) (per curiam) (op. on reh'g). Without the pleading filed in the district court setting forth the affirmative defenses and counterclaims, we cannot properly review the issues relating to those affirmative defenses and counterclaims. Appellants have waived their complaints regarding the denial of their affirmative defenses and counterclaims. We overrule Appellants' third and fourth issues.

## CONCLUSION

Having overruled each of Appellants' issues, we affirm the trial court's judgment.

_____

STEVE SMITH
Justice

OPINION DELIVERED and FILED: March 5, 2026

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirmed
CV06

